STATE OF CONNECTICUT *v.* HOLLIS WILSON, SR.
(12294)

O'CONNELL, LAVERY and LANDAU, Js.

Argued February 14—decision released June 20, 1995

*Donald D. Dakers,* special public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gerard P. Eisenman,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1)[1] and burglary in the second degree in violation of General Statutes § 53a-102 (a).[2]

The following issues were briefed by the parties: (1) whether the jury selection process relating to peremptory challenges violated the defendant's state constitutional rights; (2) whether the trial court improperly instructed the jury on the state's burden of proof and the defendant's presumption of innocence; (3) whether the state's attorney was guilty of prosecutorial misconduct; (4) whether the evidence was insufficient to find the defendant guilty of burglary in the second degree; (5) whether the composition of the jury pool violated the defendant's rights; and (6) whether the impaneling of an all female jury violated the defendant's constitutional rights.[3] We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The victim lived in Bridgeport with her two young children and her boyfriend. At about 8 p.m. on May 7, 1991, she put her children to bed and reclined on a separate bed in the same room to watch television. The victim's boyfriend was not at home. About fifteen min-

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] General Statutes § 53a-102 provides in pertinent part: "BURGLARY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

[3] The first four issues were briefed and argued by appointed counsel. With permission of the court, the defendant briefed issues five and six pro se. He was denied permission to argue these claims. See footnote 7.

utes later, she heard someone in the apartment and then saw the defendant, whom she had known for two months, standing in the bedroom doorway. She had not admitted him into the apartment. The defendant, after refusing to leave, sexually assaulted her. The defendant testified on his own behalf and claimed that intercourse with the victim had been consensual.

## I

The defendant's first claim arises out of jury selection and the exercise of peremptory challenges, particularly as such challenges apply to the selection of alternate jurors. The defendant here could peremptively challenge six jurors if alternates were not to be chosen and eight jurors if alternates were to be chosen. See footnotes 5 and 6. At the conclusion of the first day of jury selection, four jurors had been selected, and the defendant had exercised five peremptory challenges.

On the second day of jury selection, the defendant inquired as to whether alternate jurors would be selected. The judge replied, "We'll pick two alternates so that you have three challenges left and you can use them any way you like. You don't have to save [them] for alternates if you don't choose to."

After the sixth regular juror had been selected, the defendant had used seven peremptory challenges. Three more venirepersons were questioned, but none was chosen to be an alternate, and the defendant did not use his remaining challenge. At this point, the trial court announced that they would proceed to trial without alternates.

The defendant asseverates that he was vested with a state constitutional right to eight challenges, all of which could have been used selecting the regular jurors—that is, the additional challenges were not to

be exercised only during alternate jury selection. We need not decide whether the two additional challenges were for the alternates only, nor do we need to decide the effect of the trial court's giving permission to use all of the challenges at any point the parties desired.

Because this claim was not raised at trial, the defendant seeks appellate review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant fails, however, to satisfy the second prong of *Golding*, which requires that the defendant demonstrate that the claim is of constitutional magnitude.

Analysis of the authority for peremptory challenges shows that this is not a constitutional issue. Our state constitution establishes the right to peremptory challenges in both civil and criminal trials but provides that the number of such challenges is to be established by statute. Conn. Const., amend. IV.[4] Pursuant to this constitutional mandate, the legislature provided by statute for peremptory challenges in criminal prosecutions, with the number of challenges depending on the maximum sentence that could be imposed in the case. General Statutes § 54-82g.[5] The legislature also provided

---

[4] The constitution of Connecticut, article first, § 19, as amended by article fourth of the amendments provides: "The right of trial by jury shall remain inviolate, the number of such jurors, which shall not be less than six, to be established by law; but no person shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges *to be established by law*. The right to question each juror individually by counsel shall be inviolate." (Emphasis added.)

[5] General Statutes § 54-82g provides in relevant part: "The accused may challenge peremptorily, in any criminal trial before the superior court for any offense punishable by death, twenty-five jurors; for any offense punishable by imprisonment for life, fifteen jurors; for any offense the punishment for which may be imprisonment for more than one year and for less than life, six jurors; and for any other offense, three jurors. . . . The state, on the trial of any criminal prosecution, may challenge peremptorily the same number of jurors as the accused."

for alternate jurors and for peremptory challenges during their selection. General Statutes § 54-82h.[6]

We conclude that, although the right to peremptory challenges is constitutional, the number of such challenges to which a defendant is entitled is statutory. The defendant's claim does not concern his right to peremptory challenges but the number to which he was entitled. Consequently, this unpreserved claim raises a statutory, not constitutional, issue and, therefore, does not qualify for *Golding* review.

## II

In his brief, defense counsel conceded that on several occasions, our Supreme Court has approved the jury instruction that was given in this case pertaining to presumption of innocence and burden of proof. At oral argument, he conceded that this claim had not been preserved for appellate review. Under these circumstances we will not review this claim.

## III

Defense counsel informed the appellate court that, although it was briefed, he would not argue the prose-

---

[6] General Statutes § 54-82h provides in relevant part: "ALTERNATE JURORS IN CRIMINAL CASES. PEREMPTORY CHALLENGES. (a) In any criminal prosecution to be tried to the jury in the superior court if it appears to the court that the trial is likely to be protracted, the court may, in its discretion, direct that, after a jury has been selected, two or more additional jurors shall be added to the jury panel, to be known as 'alternate jurors'. Such alternate jurors shall have the same qualifications and be selected and subject to examination and challenge in the same manner and to the same extent as the jurors constituting the regular panel, provided, in any case when the court directs the selection of alternate jurors, the number of peremptory challenges allowed shall be as follows: In any criminal prosecution the state and the accused may each peremptorily challenge thirty jurors if the offense for which the accused is arraigned is punishable by death, eighteen jurors if the offense is punishable by life imprisonment, eight jurors if the offense is punishable by imprisonment for more than one year and for less than life, and four jurors in any other case."

cutorial misconduct claim. Our examination of the record discloses that the claim does not constitute a pattern of repeated, strident and serious misconduct. An isolated brief episode does not warrant reversal. *State v. Smith*, 209 Conn. 423, 428, 551 A.2d 742 (1988). The claim has no merit.

## IV

As to the fourth claim, defense counsel claimed that the evidence was insufficient to convict the defendant of burglary in the second degree because it failed to prove that the alleged burglary occurred at "night." General Statutes § 53a-102 provides that "[a] person is guilty of burglary in the second degree when he enters or *remains* unlawfully in a dwelling at *night* with intent to commit a crime therein." (Emphasis added.) The only element at issue in this claim is the requirement that the crime occur at night.

"Night" is defined by statute as "the period between thirty minutes after sunset and thirty minutes before sunrise." General Statutes § 53a-100 (a) (3). The parties stipulated that on the day of the crime sunset occurred at 7:56 p.m. Therefore, as defined by statute, night began at 8:26 p.m. The victim put the children to bed at about 8 p.m., the defendant entered the apartment at about 8:15 p.m. We appreciate that these time periods are estimates, and, therefore, it is problematic that the evidence would support a conviction for *entering* the premises at night. Defense counsel concedes, however, that it was sufficient to allow the jury to infer that the crime took more than eleven minutes to complete, and, therefore, that the defendant *remained* in the dwelling at night. The evidence supports this concession.

We conclude, that the evidence was sufficient to sustain the conviction of burglary in the second degree.

## V

Because the fifth and sixth claims, which were presented by the defendant pro se, both implicate the gender of the jurors, we will consider them together.[7] In his brief, the defendant characterized the fifth issue as follows: "The court erred in excluding all potential males from the jury which resulted in the impaneling of an all female jury, which violated the defendant's Fourteenth Amendment rights." The defendant's characterization of the issue, in his brief, together with his discussion of the peremptory challenges to individual jurors, makes it clear that he is attempting to raise a *Batson* claim. *Batson* v. *Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

The defendant, however, has failed to present us with an adequate record to review his claim of gender based discrimination in the exercise of peremptory challenges. The defendant failed to raise his *Batson* claim at the appropriate time in the trial court. Lacking such a claim, the trial court did not conduct a *Batson* inquiry, which might have established a prime facie case and created a record for appellate review. See *State* v. *Rodriguez,* 37 Conn. App. 589, 596–98, 658 A.2d 98 (1995). Accordingly, we decline to review the defend-

---

[7] When a defendant seeks to act as cocounsel with his attorney the status is known as hybrid representation. A defendant has no constitutional right to hybrid representation under either the state or federal constitution. *State* v. *Gethers,* 197 Conn. 369, 382–94, 497 A.2d 408 (1985). It is wholly within the court's discretion whether to permit hybrid representation. *State* v. *Frye,* 224 Conn. 253, 256, 617 A.2d 1382 (1993).

In the present case, the defendant wanted to raise issues that, in defense counsel's professional opinion, should not be raised. There was no duplication of effort. The defendant filed a pro se appearance together with a copy of his well drafted brief specifically stating the issues he wanted to raise and also accompanied by a motion for permission to file the brief. Under these circumstances, we exercised our discretion and allowed the brief, and later a reply brief, to be filed but denied the defendant permission to present oral argument. This type of case must be decided case-by-case.

ant's *Batson* claim on the ground that he failed to raise the matter during the voir dire and has thus failed to preserve the issue properly for appellate review.

We turn now to the claim that the composition of the jury pool violated the defendant's rights. Unlike the previous issue, this is not a *Batson* claim that peremptory challenges were exercised by the state with discriminatory intent. Rather, this is a claim that the jury array did not constitute a fair cross section of the community because of the underrepresentation of men, in violation of the fair cross section requirement enunciated in *Taylor* v. *Louisiana*, 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 83 (1975).

Our Supreme Court addressed a fair cross section claim in *State* v. *Tillman*, 220 Conn. 487, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992); see also *State* v. *Nims*, 180 Conn. 589, 430 A.2d 1306 (1980) (jury clerk improperly separated jury cards based on gender). In *Tillman*, the court analyzed a challenge to the jury array based on the defendant's claim that it contained no black males like himself. The issue was raised during voir dire, and the trial court denied a motion directed to this issue in the absence of evidence that the jury clerk was choosing people improperly. The court applied the three part test enunciated in *Duren* v. *Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979), to evaluate a constitutional challenge to the composition of a jury array. To establish a prima facie violation of the fair cross section requirement under *Duren*, "the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection pro-

cess." Id. Once the defendant has established a prima facie case, the burden shifts to the state to prove that that the selection system resulting in a nonrepresentative array furthers a significant state interest. Id., 367–68; see also *State* v. *Castonguay*, 194 Conn. 416, 421–22, 481 A.2d 56 (1984).

There is a procedural bar to the reviewability of this claim. The defendant failed to comply with Practice Book § 842 which requires a challenge to the jury array to be made "within five days after notification of the hearing or trial date, unless the defect claimed has arisen subsequent to the time required to make such motion." Although the defendant claims in his brief that he made it clear at trial while jurors were being impaneled, that an all female jury would be prejudicial, he gives no citation to the transcript of the voir dire on October 10 and 23 for this claim and we could find no reference to the raising of this issue until the sentencing hearing on December 11.

Accordingly, the defendant's claim is untimely as a matter of state procedural law and we do not reach the merits of his constitutional claim that there was a disproportionate underrepresentation of men in the jury array.

Even if there were not a procedural bar to reaching the merits of this claim, it would fail under the third prong of the *Duren* analysis because the defendant has failed to demonstrate that any underrepresentation of males was the result of the systematic exclusion of men in the formation of the jury arrays. *State* v. *Ellis*, 232 Conn. 691, 700, 657 A.2d 1099 (1995).

The judgment is affirmed.

In this opinion the other judges concurred.