Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/19/2024 09:08 AM CST

State of Nebraska, appellee, v.
Angelina M. Clark, appellant.
___ N.W.2d ___

Filed January 19, 2024.    No. S-22-865.

1. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.

3. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

4. **Juror Qualifications: Waiver.** A party who fails to challenge the jurors for disqualification and passes the jurors for cause waives any objection to their selection.

5. **Criminal Law: Intent.** The crime proscribed by Neb. Rev. Stat. § 28-311.01 (Reissue 2016) does not require an intent to execute the threats made; rather, it requires the intent to terrorize another as a result of the threats or a reckless disregard of the risk of causing such terror.

6. **Criminal Law: Evidence: Intent.** The intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident.

7. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

8. **Effectiveness of Counsel: Proof.** To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

9. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

10. **Constitutional Law: Criminal Law: Jury Trials.** The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross-section of the community.

11. **Equal Protection: Jurors: Discrimination.** The Equal Protection Clause of the 14th Amendment forbids prosecutors from using peremptory challenges to strike potential jurors solely on account of their gender.

12. **Hearsay: Words and Phrases.** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

13. **Hearsay.** An out-of-court statement is not hearsay if the proponent offers it for a purpose other than proving the truth of the matter asserted.

14. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

15. **Pretrial Procedure: Pleadings: Evidence: Juries: Appeal and Error.** A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. Therefore, when a court overrules a motion in limine to exclude particular evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court.

Appeal from the District Court for Lancaster County: Darla S. Ideus, Judge. Affirmed.

Candice C. Wooster, of Brennan, Nielsen, & Wooster Law Offices, P.C., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## I. INTRODUCTION

This is a direct appeal of convictions in the district court for Lancaster County, Nebraska, for terroristic threats and third degree sexual assault. The appellant argues that her trial before an all-male jury violated her constitutional rights to a fair trial and an impartial jury. The appellant also argues that the evidence was insufficient to support her conviction for terroristic threats and that her trial counsel was ineffective in multiple regards. Finding no error, we affirm.

## II. BACKGROUND

Early on the morning of January 14, 2020, Angelina M. Clark entered the apartment where Shauna Parker and Parker's 15-year-old son, A.L., resided. Clark knew Parker and A.L. and had visited their apartment previously. By her own admission, Clark was "heavily intoxicated" when she entered the apartment and during the events described below.[1]

Parker testified that when Clark saw her, Clark asked, "'[D]o you know anything[?]'" Parker replied, "'[N]o I don't.'" Parker explained that she understood Clark to be asking if she "knew anything about having any drugs." However, Parker acknowledged that Clark did not "use the word drugs." Parker explained that she had just understood Clark's inquiry that way.

Parker testified that after Clark had been in the apartment for several minutes, Parker offered her a ride to "get her out of [the] house." Parker drove a pickup truck. A.L., who

---

[1] Brief for appellant at 13.

accompanied Parker and Clark, sat farthest right on the passenger side. Clark was situated between Parker and A.L.

A.L. testified that during the drive, Clark placed her hand on his "upper thigh" near his torso three to five times, "groping up towards [his] penis." According to A.L., the last time Clark did so, she touched "[his] private areas over [his] pants" and then "slightly squeezed" before moving her hand back to his thigh.

According to Parker, A.L. leaned away from Clark with a "horrible look on his face." A.L.'s expression prompted Parker to ask the reason for his discomfort. A.L. initially declined to answer until they dropped Clark off. However, Parker persisted in her questions, and A.L. eventually disclosed that Clark "ma[de] him uncomfortable" and that he did not "'like [Clark] touching [him].'" Parker and Clark then began to argue about A.L.

Parker decided that Clark's ride was at an end and pulled into the parking lot of a convenience store so Clark could get out of the truck. Parker testified that as she pulled in, she observed Clark's hand on A.L.'s "inner thigh."

Parker demanded that Clark get out of the truck. Clark initially refused, so Parker told A.L. to get out of the truck. Parker testified that after exiting the vehicle and before going into the convenience store, A.L. "c[a]me around the truck and . . . said I feel violated mom. He said, 'she touched my dick.'" A.L. testified similarly that he came around the truck and told Parker that he "felt very uncomfortable and . . . needed . . . Clark to leave." That was when Parker, by her own admission, "lost [her] temper."

When Clark subsequently got out of the truck and began calling A.L.'s name, Parker "intervene[d]" to keep Clark from following A.L. into the store. Parker acknowledged that she initiated a "physical confrontation" with Clark by pushing or slapping her.

According to Parker, during that confrontation, Clark got back in the truck and "start[ed] rummaging through [it].

Threatening thing[s] — like you know, like she's going to have her daughter and . . . her friends beat me up. Like everybody was going to beat me up, you know. I was done. And . . . she's going to have my ass beat or whatever." Parker testified that Clark then grabbed what the parties variously describe as a box cutter or utility knife from the truck's glove compartment and "was like bitch I'm going to kill you."

A.L. observed the confrontation through the front door of the convenience store. He saw Clark "swinging [the box cutter] around at [Parker]." However, he was unable to hear what Clark and Parker were saying.

Law enforcement was called. Clark left the scene before officers arrived but was apprehended nearby. Clark was subsequently charged with terroristic threats under Neb. Rev. Stat. § 28-311.01 (Reissue 2016) and third degree sexual assault under Neb. Rev. Stat. § 28-320(1)(a) (Reissue 2016). She pled not guilty, and the matter proceeded to a jury trial.

Jury selection occurred on October 11, 2022. The record does not indicate how many prospective jurors were summoned. It shows only that 27 prospective jurors were "randomly selected" to be seated up front. Other prospective jurors were present. At least eight prospective jurors were female, based on the titles used to refer to them during voir dire. However, everyone ultimately selected to serve on the jury was male.

The jury found Clark guilty of both counts. She was sentenced to consecutive terms of 1 year's imprisonment, with 9 months' post-release supervision, for the terroristic threats conviction and 6 months' imprisonment for the sexual assault conviction.

Clark appeals, and we moved the matter to our docket.[2]

### III. ASSIGNMENTS OF ERROR
Represented by different counsel on appeal, Clark assigns, restated and reordered, that (1) the all-male jury deprived

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

her of her constitutional right to a fair trial and an impartial jury and (2) there was insufficient evidence to support her conviction for terroristic threats. She also assigns that her trial counsel was ineffective in multiple regards.

## IV. STANDARD OF REVIEW

[1] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact.[3] The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]

[2,3] Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.[5] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[6]

## V. ANALYSIS

### 1. Trial Before All-Male Jury

Clark argues that she was deprived of her rights under the 6th and 14th Amendments to the U.S. Constitution to a fair trial and an impartial jury because she was tried before an all-male jury. Clark acknowledges that "'[d]efendants are not

---

[3] *State v. Lorello*, 314 Neb. 385, 991 N.W.2d 11 (2023).

[4] *Id*.

[5] *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023).

[6] *Id*.

entitled to a jury of any particular composition.'"[7] She also acknowledges that "women were included in the full venire list called to serve" and that it is "unclear" whether women were purposefully "removed."[8] However, she asserts that the "lack of any females within the final jurors chosen for trial is enough evidence to support an assertion that something did not happen as it should have during jury selection — whether the calling of a disproportionate jury pool or discrimination in jury selection."[9] The State counters that "any objection to the jury was waived once the jury was passed for cause."[10]

Over a century ago in *Turley v. State*,[11] we rejected the defendant's claim that his conviction should be reversed because after the trial was completed, one of the jurors was discovered to have been formerly convicted of a felony. In so doing, we reasoned:

> Great latitude is allowed the defendant upon the voir dire examination to enable him to ascertain whether there is any ground for objecting to the juror. He cannot waive an objection of this nature, and, after taking his chances of an acquittal before the jury selected, insist upon an objection which he should have raised upon the impaneling of the jury, and, if he makes no effort to ascertain whether a juror offered is qualified to sit, he must be held to have waived the objection.[12]

[4] Our subsequent opinions clarified that *Turley* holds that "when a defendant, through diligence, is able to discover a reason to challenge a juror, the objection to the juror must

---

[7] Brief for appellant at 12 (quoting *Taylor v. Louisiana*, 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975)).

[8] *Id*. at 10.

[9] *Id*. at 11-12.

[10] Brief for appellee at 12.

[11] *Turley v. State*, 74 Neb. 471, 104 N.W. 934 (1905).

[12] *Id*. at 476, 104 N.W. at 936 (emphasis omitted).

be made at the time of voir dire."[13] In other words, *Turley* does not stand for the proposition that an objection to a juror is waived when the juror has concealed information and the defendant through diligence cannot discover the information before trial.[14] However, we have otherwise hewed to the rule that a party who fails to challenge the jurors for disqualification and passes the jurors for cause generally waives any objection to their selection as jurors.[15]

In the present case, Clark does not suggest that something has been concealed as to the jurors and could not have been discovered through diligence before trial. Nor does she dispute that her trial counsel failed to challenge the jurors for disqualification at the trial and passed the jurors for cause. To the contrary, Clark alleges that her trial counsel was ineffective for failing to object to the all-male jury. Accordingly, we agree with the State that Clark waived any objection to the all-male jury. We will, however, discuss her claim that the all-male jury violated her constitutional rights to a fair trial and an impartial jury further below in conjunction with her claims of ineffective assistance of counsel.

## 2. Sufficiency of Evidence as to Terroristic Threats

Clark also argues that the evidence was insufficient to support her conviction for terroristic threats. In particular, she argues that there was "no direct evidence that points to [her] intent to actually terrorize" Parker and that her words and actions and the surrounding circumstances fail to show such intent.[16] The State, on the other hand, argues that during

---

[13] *State v. Harris*, 264 Neb. 856, 861, 652 N.W.2d 585, 589 (2002).

[14] *Id*.

[15] See, e.g., *State v. Huff*, 298 Neb. 522, 905 N.W.2d 59 (2017); *Bittner v. Miller*, 226 Neb. 206, 410 N.W.2d 478 (1987); *Schroll v. Fulton*, 213 Neb. 310, 328 N.W.2d 780 (1983); *Regier v. Nebraska P. P. Dist.*, 189 Neb. 56, 199 N.W.2d 742 (1972).

[16] Brief for appellant at 13.

the confrontation between Clark and Parker, Clark "grabbed a box cutter from [the truck]," saying, "'[B]itch I'm going to kill you.'"[17] The State argues that a reasonable jury could infer from those words and actions and the surrounding circumstances that Clark intended to terrorize Parker.

[5,6] The statute under which Clark was charged, § 28-311.01, provides, in relevant part, that persons commit the offense of terroristic threats if they threaten to commit any crime of violence with the intent to terrorize another or in reckless disregard of causing such terror. In other words, the crime proscribed by § 28-311.01 does not require an intent to execute the threats made; rather, it requires the intent to terrorize another as a result of the threats or a reckless disregard of the risk of causing terror to another.[18] In turn, for purposes of the crime of terroristic threats, the intent to terrorize another is an intent to produce intense fear or anxiety in another.[19] The intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident.[20]

In the present case, there was uncontroverted testimony from Parker that she and Clark were involved in a "physical confrontation" and that in the course of that confrontation, Clark threatened to have her "beat[en] . . . up" by various persons before grabbing a box cutter and saying, "[B]itch I'm going to kill you." Parker also testified that she was "concerned for [her] safety" and backed away from Clark. Clark's trial counsel pressed Parker about whether she "backed up" out of fear of what Clark might do with the box cutter or because Clark stepped out of the vehicle. However, any dispute as to

---

[17] Brief for appellee at 15.

[18] *State v. Saltzman*, 235 Neb. 964, 458 N.W.2d 239 (1990).

[19] *State v. Bryant*, 311 Neb. 206, 971 N.W.2d 146 (2022).

[20] *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023).

whether Parker was actually terrorized by Clark's threats is immaterial. Section 28-311.01 does not require that the recipient of the threat be actually terrorized; rather, it requires that the actor have the intent to terrorize the recipient as a result of the threat or a reckless disregard of the risk of causing terror, as was previously noted.[21]

We agree with the State that viewing the foregoing evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime of terroristic threats and, in particular, an intent to produce intense fear or anxiety in another. Prior opinions have upheld convictions for terroristic threats where the defendant displayed a weapon[22] and made statements like "'consider yourself next on my list for a bullet'"[23] or "'"[n]ow you are going to get yours."'"[24]

Clark's primary basis for arguing that the requisite intent cannot be inferred from her words and acts and the surrounding circumstances is apparently that she was "heavily intoxicated when the incident occurred."[25] Clark relies on our 1990 opinion in *State v. Saltzman*[26] for the proposition that while voluntary intoxication does not ordinarily justify or excuse a crime, an accused may be intoxicated to such an extent that "the accused is incapable of forming the intent required as an element of the crime charged."

---

[21] *Bryant, supra* note 19.

[22] See, e.g., *State v. Tucker*, 17 Neb. App. 487, 764 N.W.2d 137 (2009); *State v. Curlile*, 11 Neb. App. 52, 642 N.W.2d 517 (2002); *State v. Tillman*, 1 Neb. App. 585, 511 N.W.2d 128 (1993).

[23] *Bryant, supra* note 19, 311 Neb. at 209, 971 N.W.2d at 149.

[24] *Tillman, supra* note 22, 1 Neb. App. at 587, 511 N.W.2d at 130. See, also, *Saltzman, supra* note 18, 235 Neb. at 968, 458 N.W.2d at 242 (defendant said, among other things, that he was going to "'get'" victim and her children).

[25] Brief for appellant at 13.

[26] *Saltzman, supra* note 18, 235 Neb. at 970, 458 N.W.2d at 244.

However, as the State observes, in 2011, several years after our opinion in *Saltzman*, the Legislature enacted Neb. Rev. Stat. § 29-122 (Reissue 2016), which provides that intoxication may not be considered in determining the existence of a mental state that is an element of a criminal offense unless the defendant proves, by clear and convincing evidence, that he or she did not know that the substance was intoxicating when he or she ingested it or that the substance was not voluntarily ingested. Clark points to no evidence showing that on the night in question, she did not know she was ingesting alcohol or that she did not voluntarily ingest alcohol. As such, the fact that Clark was "heavily intoxicated"[27] cannot be seen to preclude her from having had the requisite intent to terrorize Parker and produce intense fear or anxiety in Parker.

### 3. Clark's Claims of Ineffective Assistance of Trial Counsel

In addition, Clark assigns that her trial counsel was ineffective for (1) failing to object to the all-male jury, (2) failing to object on hearsay grounds to Parker's testimony about A.L.'s statements regarding the sexual assault, and (3) failing to file a motion in limine to exclude Parker's testimony that Clark asked about purchasing drugs.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.[28] However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved.[29] The determining factor is whether the record is sufficient to

---

[27] Brief for appellant at 13.

[28] *State v. Garcia, ante* p. 74, 994 N.W.2d 610 (2023).

[29] See *State v. Boone*, 314 Neb. 622, 992 N.W.2d 451 (2023).

adequately review the question under the standard of review previously noted.[30] The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.[31]

[7-9] Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[32] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[33] To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[34] To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[35] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[36]

A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either.[37]

### (a) Failing to Object to All-Male Jury

Clark argues that her trial counsel was ineffective for failing to object to the all-male jury. Clark claims that "[a]

---

[30] *Mabior, supra* note 5.

[31] *Id*.

[32] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[33] *Garcia, supra* note 28.

[34] *Id.*

[35] *Id*.

[36] See *id*.

[37] See *id*.

lawyer with ordinary training and skill would have objected to the all-male jury and to the peremptory challenges made to at least preserve the issue for appellate purposes."[38] Clark also claims that she was prejudiced by her trial counsel's deficient performance in this regard, because the all-male jury violated her 6th and 14th Amendment rights to a fair trial and an impartial jury. The State, in turn, argues that trial counsel's performance was not deficient and that Clark cannot show that she was prejudiced thereby.

Clark likens her situation to that of the defendant in *Taylor v. Louisiana*.[39] In *Taylor*, a state law barred women from being selected for jury service unless they had previously filed a written declaration of their desire to be subject to jury service.[40] As a result, even though women represented 53 percent of the citizens eligible for jury service in the defendant's judicial district, there were no females on the 175-person venire drawn for jury service in his case.[41] The defendant challenged his conviction by an all-male jury, arguing that the all-male jury violated his 6th and 14th Amendment right to an impartial jury trial.[42] The U.S. Supreme Court agreed.[43] The Court reasoned that the selection of a petit jury from a "representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial"[44] and that this fair-cross-section requirement was violated by the "systematic exclusion of women" from the jury in the defendant's case.[45]

---

[38] Brief for appellant at 16.

[39] *Taylor, supra* note 7.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.*, 419 U.S. at 528.

[45] *Id.*, 419 U.S. at 531.

Clark also points to *J. E. B. v. Alabama ex rel. T. B.*,[46] wherein the U.S. Supreme Court found that the State's use of peremptory challenges to exclude men from the jury, based solely on their gender, violated the Equal Protection Clause of the 14th Amendment. The State used 9 of its 10 peremptory challenges to remove males.[47] As a result, the State's case seeking to establish the petitioner's paternity and obligate him to pay child support was tried before an all-female jury.[48]

Clark argues that even though the all-male jury in her case was not due to a rule excluding women, "the result was the same" as in *Taylor* and *J. E. B.*[49] She also argues that the same "concerns brought up in *Taylor* [and *J. E. B.*] are present" in her case.[50] Clark maintains that even if the all-male jury in her case did not result from any "purposeful gender exclusion," it nonetheless deprived her of her right to a jury of her peers, and that the denial of that right warrants the reversal of her convictions.[51] Clark similarly maintains that the statement in *Taylor* that while petit juries must be drawn from a source fairly representative of the community, "'[d]efendants are not entitled to a jury of any particular composition,'"[52] pertains only to the relative number of males and females on the jury. In Clark's view, the situation is different where there is the "complete lack of a gender group."[53]

[10,11] We have followed the principles set forth in *Taylor*, *J. E. B.*, and related cases in our own opinions. We have recognized that the Sixth Amendment secures to criminal

---

[46] *J. E. B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994).

[47] *Id.*

[48] *Id.*

[49] Brief for appellant at 10.

[50] *Id.*

[51] *Id.*

[52] *Id.* at 12 (quoting *Taylor, supra* note 7).

[53] *Id.*

defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross-section of the community.[54] We have also recognized that the Equal Protection Clause of the 14th Amendment forbids prosecutors from using peremptory challenges to strike potential jurors solely on account of their gender.[55]

However, consistent with U.S. Supreme Court opinions, we have also required that defendants make certain initial showings in such cases. Specifically, to establish a prima facie violation of the fair-cross-section requirement under the Sixth Amendment, a defendant must show that the underrepresentation of the group alleged to be excluded is due to systematic exclusion of the group in the jury selection process, among other things.[56] Similarly, in order to show that a prosecutor has used peremptory challenges in a discriminatory manner in violation of the 14th Amendment, a defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of gender.[57]

Clark does not point to any evidence that women were systematically excluded during the jury selection process to which her trial counsel failed to object. Nor does Clark point to any evidence that the prosecutor exercised peremptory challenges on the basis of gender to which her trial counsel failed to object. Instead, Clark invites us to presume that "something did not happen as it should have during jury selection" from the fact that the jurors selected were all male.[58] Like

---

[54] See, e.g., *State v. Trail*, 312 Neb. 843, 981 N.W.2d 269 (2022); *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019); *State v. Sanders*, 269 Neb. 895, 697 N.W.2d 657 (2005).

[55] See, e.g., *State v. Lowe*, 267 Neb. 782, 677 N.W.2d 178 (2004), *abrogated on other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010); *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000), *abrogated on other grounds, State v. Mata*, 275 Neb. 1, 745 N.W.2d 229 (2008).

[56] *Trail, supra* note 54.

[57] *Lowe, supra* note 55.

[58] Brief for appellant at 12.

other courts, we decline to adopt such invitation.[59] "Purposeful discrimination may not be assumed, or merely asserted,"[60] and incredulity at an all-male or all-female jury is no substitute for evidence of discrimination.[61]

Because there was no evidence that women were systematically excluded during the jury selection process or that the prosecutor exercised peremptory challenges on the basis of gender, any objection to the all-male jury on those grounds would have been meritless. Counsel is not deficient for failing to raise a meritless objection.[62]

### (b) Failing to Object on Hearsay Grounds to Parker's Testimony About A.L.'s Statements

Clark also argues that her trial counsel was ineffective for failing to object on hearsay grounds to Parker's testimony about A.L.'s statements regarding the sexual assault. Clark acknowledges that A.L. himself testified about the assault, but she argues that hearing the information from both Parker

---

[59] See, e.g., *State v. Bell*, No. 2 CA-CR 2023-0016-PR, 2023 WL 2473271 (Ariz. App. Mar. 13, 2023) (nonprecedential); *Commonwealth v. Thoman*, 284 A.3d 944 (Pa. Super. 2022) (nonprecedential); *State v. Reed*, 181 S.W.3d 567 (Mo. 2006); *State v. Wilson*, 38 Conn. App. 231, 660 A.2d 365 (1995); *State v. Collins*, 588 So. 2d 766 (La. App. 1991), *overruled on other grounds, State v. Ford*, 643 So. 2d 293 (La. App. 1994); *Com. v. McFerron*, 680 S.W.2d 924 (Ky. 1984); *State v. Snoddy*, 332 So. 2d 800 (La. 1976); *Marquez v. State*, 91 Nev. 471, 538 P.2d 156 (1975).

[60] *Marquez, supra* note 59, 91 Nev. at 473, 538 P.2d at 157. Cf. *State ex rel. Macy v. Bragg*, 13 P.3d 503 (Okla. Crim. App. 2000) (without evidence of discriminatory juror selection mechanism, result can be attributed only to chance).

[61] Cf. *Wong v. Lumpkin*, No. A-22-CV-416-RP, 2023 WL 3483899 (W.D. Tex. May 16, 2023) (rejecting petitioner's claim that trial counsel was ineffective for not objecting to all-female jury, where plaintiff was incredulous at all-female jury but offered no evidence of bias).

[62] Cf., *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022); *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020).

and A.L. "cause[d] [the jurors] to believe it must be true."[63] The State counters that Parker's testimony was not hearsay, because it was offered for context and coherence and to show the statements' impact on Parker. The State also argues that Clark cannot show that she was prejudiced by trial counsel's failure to object to Parker's testimony about A.L.'s statements, because that testimony was cumulative of other testimony.

[12,13] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.[64] Hearsay is not admissible unless otherwise provided for in the Nebraska Evidence Rules or elsewhere.[65] However, by definition, an out-of-court statement is not hearsay if the proponent offers it for a purpose other than proving the truth of the matter asserted.[66] For example, statements are not hearsay to the extent that they are offered for context and coherence of other admissible statements, and not for "'the truth or the truth of the matter asserted.'"[67] Statements are also not hearsay if the proponent offers them to show their impact on the listener, and the listener's knowledge, belief, response, or state of mind after hearing the statement is relevant to an issue in the case.[68]

Turning to the seven statements made by Parker to which Clark claims that her trial counsel should have objected, we agree with the State that those statements were not hearsay, because they were offered for context and coherence and to show their impact on Parker, and not to prove that Clark sexually assaulted A.L. Parker admits that she initiated the "physical confrontation" with Clark. Parker's testimony concerning

---

[63] Brief for appellant at 16.

[64] *State v. Vaughn*, 314 Neb. 167, 989 N.W.2d 378 (2023).

[65] *Id*.

[66] *Id*.

[67] *Id*. at 188, 989 N.W.2d at 396.

[68] *Id*.

what A.L. told her about Clark during the drive and immediately after they stopped at the convenience store explains why she did so, why she "lost [her] temper" and pushed or slapped Clark when it appeared that Clark was attempting to follow A.L. into the convenience store.

Specifically, Parker testified that A.L. initially answered her inquiry about what was wrong by stating, "'[N]othing we'll talk about it after we drop [Clark] off.'" However, Parker testified that she persisted in her questions and that A.L. subsequently made one or more statements to the effect that Clark made him "uncomfortable" and that he did not like Clark touching him. Parker also testified that after getting out of the truck at the convenience store, A.L. "c[a]me around the truck and . . . said I feel violated mom. He said, 'she touched my dick.'"

It was those statements, all made within a span of 5 to 10 minutes, that caused Parker to initiate the confrontation with Clark during which Clark made the threats for which she was subsequently prosecuted. Because the statements were not hearsay, any objection to them on that ground would have been meritless. As such, Clark's claim that her trial counsel was ineffective for failing to object on hearsay grounds to Parker's testimony about A.L.'s statements is without merit.

### (c) Failing to File Motion in Limine to Exclude Statements About Purchase of Drugs

Clark's third and final claim of ineffective assistance of counsel concerns Parker's testimony that shortly after entering Parker's apartment, Clark made an inquiry that Parker understood to refer to the purchase of drugs. Clark observes that she was not charged with a controlled substance offense; nor was there any evidence that she was under the influence of a controlled substance at the time of the events in question. As such, she argues, Parker's testimony was unnecessary and prejudicial because "[d]rugs are by nature considered

bad things and associated with criminals."[69] Therefore, Clark claims that her trial counsel was ineffective "for not even attempting to keep out all evidence and statements regarding drugs."[70] The State takes a different view.

There might be merit to a claim like that raised by Clark under certain circumstances, as Clark suggests with her reference to our opinion in *State v. Masters*.[71] In *Masters*, we found that testimony that the defendant "'had some type of connection with drugs'" was so prejudicial that it required the reversal of his conviction.[72] We emphasized, however, that this outcome reflected the "factual context" of that case.[73]

[14] The present factual context is different. Most notably, it is different in that Clark assigns as error only that her trial counsel was ineffective for "fail[ing] to file a [m]otion in [l]imine to keep out any statements regarding the purchase of drugs." She does not assign as error that her trial counsel was ineffective for failing to object to Parker's testimony at trial, although she argues in her brief on appeal that Clark "received ineffective assistance of counsel when those statements were allowed in . . . without any objection by [t]rial [c]ounsel."[74] An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[75] As such, our review is limited to Clark's claim that her trial counsel was ineffective for failing to file a motion in limine to exclude Parker's testimony.

[15] We find that even if trial counsel was ineffective for failing to file a motion in limine, Clark cannot show that she

---

[69] Brief for appellant at 17.

[70] *Id*.

[71] *State v. Masters*, 216 Neb. 304, 343 N.W.2d 744 (1984).

[72] *Id*. at 307, 343 N.W.2d at 746.

[73] *Id*. at 308, 343 N.W.2d at 746.

[74] Brief for appellant at 17.

[75] *Saylor v. State, ante* p. 285, 995 N.W.2d 192 (2023).

was prejudiced thereby. A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury.[76] It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence.[77] Therefore, when a court overrules a motion in limine to exclude particular evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court.[78] Here, however, Clark acknowledges that her trial counsel did not object to Parker's testimony about Clark's alleged inquiry about drugs.

Accordingly, Clark cannot show that she suffered prejudice as a result of her trial counsel's failure to file a motion in limine, because a motion in limine in and of itself, without any objection at trial, would have been futile, and Clark did not assign that her trial counsel was ineffective for failing to object to the statement at trial.[79]

## VI. CONCLUSION

Clark's claims that the all-male jury violated her constitutional rights, that there was insufficient evidence to support her conviction for terroristic threats, and that her trial counsel was ineffective in multiple regards are without merit. As a result, the judgment of the district court is affirmed.

AFFIRMED.

---

[76] *Vaughn, supra* note 64.

[77] *Id*.

[78] *Id*.

[79] See, e.g., *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022); *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018); *State v. Britt*, 237 Neb. 163, 465 N.W.2d 466 (1991); *State v. Thomas*, 236 Neb. 553, 462 N.W.2d 862 (1990).