IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MUNOZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LEOPOLDO MUNOZ, APPELLANT.

Filed January 27, 2026.    No. A-25-285.

Appeal from the District Court for Lincoln County: MICHAEL E. PICCOLO, Judge. Affirmed.

Chevas Shaw, of Shaw Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

MOORE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

Following a jury trial in the Lincoln County District Court, Leopoldo Munoz was found guilty of second degree assault and use of a deadly weapon to commit a felony. On appeal, Munoz claims his trial counsel was ineffective in several ways. We affirm.

## BACKGROUND

On September 1, 2021, Munoz was arrested after his wife, Yuseidy Ruiz Almanza, sought medical attention at a local emergency room for bruising on her neck, abdomen, and wrists. She disclosed that her husband assaulted her the previous night. When law enforcement arrived, Yuseidy explained that Munoz forced her into a garage, placed a rope around her neck, temporarily suspended her in the air, tied her wrists, and beat her.

The operative charging document against Munoz was an amended information filed on November 4, 2024. The State charged Munoz with second degree assault, a Class IIA felony, and

use of a deadly weapon to commit a felony, a Class II felony. Trial counsel, whose purported ineffectiveness is the subject of Munoz' appeal, was appointed by the district court on January 17, 2023. A jury trial was ultimately scheduled for January 2025.

STATE'S MOTIONS IN LIMINE

Prior to trial, the State filed two motions in limine. The first, filed on December 20, 2024, alleged that Munoz had "not provided any discovery to the State," despite the district court's order of statutory discovery. It claimed, "any witness testimony or evidence not produced by [Munoz] during discovery" would be "unfairly prejudicial," if introduced by him at trial. On the same date, the State also filed lists of proposed witnesses and exhibits.

At a pretrial conference 3 days later, the district court heard arguments on the State's motion. The State asserted Munoz should "not be allowed to put on evidence" at trial because of his failure to file a list of proposed witnesses and exhibits. In reply, trial counsel stated Munoz "ha[d] not made [him] aware of any potential witness" that did not already appear "on either the designation on the pleadings or on the State's most current witness list." Later that same day, the court entered an order denying the State's motion in limine. However, the court ordered Munoz to "submit [a] list of potential witnesses and exhibits to the State" no later than January 3, 2025. The court warned that Munoz' failure to comply with its directive may prevent him from introducing evidence at trial.

On January 6, 2025, 8 days before trial, the State filed a second motion in limine. The contents of this motion were largely identical to the first, but it included an additional allegation that Munoz had failed to submit a list of proposed witnesses and exhibits, as previously ordered by the district court. At a hearing on the motion, the State acknowledged that it could not preclude Munoz from testifying at trial nor could it prevent him from calling rebuttal or impeachment witnesses. But it contended that Munoz' case "should be limited to that solely" because of his failure to comply with the court's order. Munoz' trial counsel replied:

> [Trial Counsel:] Judge, I have no witnesses to identify who do not already appear on either the State's witness list or the designation of witnesses contained in the Information.
>
> Any claim by the State that they would suffer unfair prejudice is spacious [sic] if I call anyone from either any of their lists or a person identified on the Information.
>
> The purpose of such list, witness list is to give notice to an opposing party of a person who may be called to testify. So if the State has identified people, they certainly have notice that they will be called to testify.

The district court subsequently entered an order granting the State's second motion in limine. The order prohibited Munoz "from introducing testimony other than from" himself "and evidence that ha[d] not otherwise been previously provided and produced to the State."

TRIAL EVIDENCE

A 2-day jury trial began on January 14, 2025, and continued on January 15. The relevant evidence adduced is set forth below.

On the evening of August 31, 2021, Munoz and Yuseidy began to argue at their residence in Sutherland, Nebraska, over money that "had gone missing." At some point during the argument, Munoz exited the house and went to the garage. After Munoz left, Yuseidy tended to the couple's two children and went to bed. She was abruptly awakened when Munoz took her arm and forced her into the garage. Upon entering the garage, Yuseidy noticed a "noose" hanging from the ceiling. Munoz placed the noose around her neck to the point where she could not breathe and used a "plastic thing[]" to restrain her hands. Munoz proceeded to hit her "a whole bunch" and strike her stomach, knees, and buttocks. When Yuseidy began to scream, Munoz removed her underwear and placed it in her mouth. When she struggled to breathe, Munoz removed the underwear, grabbed an iron bar, and asked for her "last words."

Throughout the incident, Munoz accused Yuseidy of cheating on him. According to Yuseidy, when Munoz "wasn't yelling at [her] or hitting [her]," he would sit in a chair and make phone calls. Munoz eventually cut her hand restraints, and she used the opportunity to loosen the noose and run from the garage to the house. Although Yuseidy attempted to lock Munoz out of the home, he was able to enter through another entrance and prevented her from contacting law enforcement. At this point, the couple's two children woke up, and Munoz began to tell them that their mother "destroyed the family," "was a bad mom," and "a bad person." Yuseidy eventually went to go lie down in one of the children's rooms. However, she was unable to sleep because Munoz kept coming to check if she was still in the room. The next day, Yuseidy was able to briefly contact her mother and brother. Her mother then reached out to Yuseidy's English as a second language teacher. The teacher came to the home, picked Yuseidy up, and took her to the hospital.

The physician who treated Yuseidy provided testimony about the extent of her injuries. The physician stated Yuseidy's injuries were indicative of "a prolonged strangulation event" and "a hanging." Her injuries included "bruises to the face," "ligature marks on the wrists," and "a circumferential bruise around her entire neck extending into the back of her neck with swelling of the musculature." The physician also indicated Yuseidy "surprisingly" "had petechiae" on the back of her throat. Petechiae are marks that become visible when "small blood vessels" "are not allowed to drain" and "pop" because of "increased pressure." According to the physician, they could "count on one hand the amount of times that [they had] seen petechiae on the back of the throat." Photographs of Yuseidy's injuries were received by the district court and considered by the jury. The photographs show bruising around her neck, wrists, and face, consistent with the physician's description.

The State rested its case on January 14, 2025. Munoz' trial counsel requested a "recess for the day" because he was "still visiting with [his] client about the possibility that he could testify." He also had "a potential rebuttal witness" that he "need[ed] to follow up with." The district court granted the request, and trial continued the next day.

On the second day of trial, Munoz testified in his own defense. During direct examination by his trial counsel, Munoz admitted to beating Yuseidy, but he did not believe "it was that much." He also conceded that he put a rope around her neck. However, later in his testimony, he stated that the incident was "an accident" and that Yuseidy "fell and hurt herself."

JUROR'S STATEMENTS DURING TRIAL

Some of Munoz' claims on appeal concern the potential bias of one of the jurors in his case.

After adjourning for lunch on the first day of trial, the district court informed the parties that one of the jurors "ha[d] some issues" he wanted to discuss. The juror indicated that he was from Sutherland, Nebraska, and had "heard some things back when" Munoz' crimes were committed. According to the juror, he had not talked or heard about the case "since it happened," and the information he obtained at the time was nothing more than the "[w]ord around town." The juror also informed the parties that he had "just recently" "been in the house and the garage" where Munoz' assault occurred because a person he knew had purchased the residence. Upon questioning by the court, the juror stated he did not think this information would "affect [him] at all" and had not otherwise formed an opinion about the case. The State briefly examined the juror, and he affirmed that he could be fair and impartial. Although the court afforded Munoz' trial counsel an opportunity to voir dire the juror, he declined.

Prior to deliberations, the judge discharged this juror as an alternate. He took no part in rendering the verdict.

VERDICT AND SENTENCE

The jury found Munoz guilty of both counts in the amended information. The district court sentenced Munoz to "no less than 15 years and no more than 18 years" for count I and "no less than 24 years and no more than 30 years" for count II. The court ordered the sentences to run consecutively, and Munoz was given credit for 1,301 days served.

Munoz appeals.

ASSIGNMENTS OF ERROR

Munoz assigns, restated, that his trial counsel was ineffective by (1) failing to adequately meet and consult with him prior to trial; (2) not filing a timely witness and exhibit list as required by the district court's order; (3) failing to voir dire a juror after he disclosed that he had previously heard about Munoz' crimes; and (4) not moving for a mistrial after the juror was allowed to remain on the jury.

STANDARD OF REVIEW

Whether a claim of ineffective assistance of counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Npimnee*, 316 Neb. 1, 2 N.W.3d 620 (2024). In reviewing a claim of ineffective assistance of counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

ANALYSIS

All of Munoz' claims on appeal relate to his trial counsel's alleged ineffectiveness. As such, we recount the principles governing claims of ineffective assistance of counsel on direct appeal.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question under the standard of review previously noted. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudiced as a matter of law, or that trial counsel's actions could not be justified as part of any plausible trial strategy. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Clark, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either. *Id.*

FAILURE TO MEET AND CONFER

In his first assignment of error, Munoz claims his trial counsel was ineffective for "failing to meet with" him "prior to trial to discuss defense strategy, potential witnesses, and trial preparation." Brief for appellant at 6. In his brief, he asserts his trial counsel only met with him "two or three times before trial," over a 2-year period. *Id.* at 13. According to Munoz, trial counsel's "failure to meet with [him] to discuss trial strategy . . . left [him] without meaningful input in the preparation of his own defense." *Id.* at 14. He concludes that "there is a reasonable probability that, but for these failures, the result of the trial would have been different." *Id.*

The State claims Munoz' assignment of error is insufficiently specific under *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), and its progeny. Alternatively, it contends "the record contradicts [the] allegation that trial counsel never spoke with Munoz prior to trial" and that the evidence of guilt adduced at trial was so overwhelming as to render any deficient performance nonprejudicial. Brief for appellee at 9.

Even if we assume that Munoz has sufficiently alleged deficient performance, we agree with the State that the evidence adduced at trial, specifically Munoz' own admissions, rendered any deficient performance nonprejudicial to his case. At trial, testimony elicited from Yuseidy showed that Munoz took her to a garage, put a rope around her neck, and severely assaulted her.

- 5 -

Physician testimony demonstrated that Yuseidy's injuries were consistent with strangulation and hanging, and photographs considered by the jury showed severe bruising around Yuseidy's neck, wrists, and face. Munoz decided to testify in his own defense. During his testimony, he unequivocally admitted that he assaulted his wife and put a rope around her neck. Although he seemed to dispute the extent of Yuseidy's injuries, he nonetheless corroborated his wife's claims.

We fail to see how trial counsel's failure to meet with Munoz on additional occasions raises a reasonable probability that the result at trial would have been different when Munoz himself decided to testify at trial and largely admitted the allegations against him. Nowhere in his brief does he claim trial counsel wrongfully advised him to testify or that counsel compelled him to take the witness stand against his wishes. Considering the overwhelming evidence of Munoz' guilt, we conclude he was not prejudiced by his trial counsel's alleged failure to sufficiently meet and confer with him regarding his defense.

We also note that while Munoz' assignment of error alleges that trial counsel failed to adequately meet with him prior to trial, he argues in the body of his brief that his trial counsel also failed to "undertake[] even a minimal investigation" to identify witnesses or evidence that could have "support[ed] the defense theory, challenged the credibility of the State's witnesses, or present an alternative account of events." Brief for appellant at 13-14. However, trial counsel's purported failure to investigate the case was not assigned as error. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting error to be considered by an appellate court. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). Munoz did not assign this failure to investigate claim as error, and we therefore will not address it.

FAILURE TO FILE LIST OF WITNESSES AND EXHIBITS

Munoz argues that his trial counsel was ineffective by failing to file a list of witnesses and exhibits with the district court. According to Munoz, despite being ordered to submit a list of his potential witnesses and exhibits no later than January 3, 2025, trial counsel "consciously chose to disregard the [c]ourt's discovery order." Brief for appellant at 15. He claims he was prejudiced by trial counsel's decision "because as a result, the State's [second] Motion in Limine was granted, prohibiting" him "from introducing any witness testimony or evidence" not produced during discovery. *Id.*

We conclude Munoz was not prejudiced by trial counsel's failure to file a list of proposed witnesses and exhibits. While it is true the district court granted the State's second motion in limine and restricted Munoz from presenting witness testimony and evidence not disclosed during discovery, trial counsel made clear that Munoz had "not made [him] aware of any potential witness" that did not already appear "on either the designation on the pleadings or on the State's most current witness list." At the time trial counsel made this statement, Munoz was present virtually and did not attempt to interject or indicate otherwise. We also observe that at trial, Munoz cross-examined several of the State's witnesses, which, according to trial counsel, would have been the same witnesses included on any proposed list submitted by Munoz. We also note that in his brief, Munoz does not identify any witnesses who should have been included on a proposed list.

Since Munoz was able to cross-examine any witness who would have been included on his proposed witness list, he was not prejudiced by trial counsel's failure to file such a list. Accordingly, this claim of ineffective assistance of trial counsel fails.

### FAILURE TO VOIR DIRE JUROR AND MOVE FOR MISTRIAL

Munoz next asserts that his trial counsel was ineffective for failing to voir dire a juror who, during a recess on the first day of trial, expressed some prior familiarity with the case. Munoz claims he was prejudiced because that juror could have shared his personal knowledge with others on the jury.

We first note that jurors are presumed to follow their instructions unless evidence to the contrary is shown. *State v. Price*, 320 Neb. 1, 26 N.W.3d 70 (2025). The judge in this case admonished the jury several times to not discuss the case amongst themselves until the matter was submitted.

Munoz could not have been prejudiced by trial counsel's alleged deficiency in failing to inquire about the exact extent of the juror's prior knowledge because this juror was discharged as an alternate before deliberations commenced. Thus, the juror in question was not involved in weighing the evidence, assessing witness credibility, or rendering a verdict. Since the juror at issue did not participate in deliberations, there is not a reasonable probability that but for trial counsel's failure to question him and ascertain the extent of his personal knowledge of the case, the result of the trial would have been different.

In a separate but related assignment of error, Munoz claims his trial counsel was ineffective for failing to move for a mistrial after the juror was allowed to remain on the jury. However, as explained above, the record affirmatively refutes this claim. The record shows that the juror did not remain on the jury. He was discharged as an alternate prior to deliberations. Accordingly, both of these claims of ineffective assistance of trial counsel fail.

### CONCLUSION

For the foregoing reasons, we affirm Munoz' convictions.

AFFIRMED.