Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:07 PM CDT

State of Nebraska, appellee, v.
Nolan M. King, appellant.
___ N.W.3d ___

Filed June 28, 2024.    No. S-23-814.

1. **Trial: Witnesses: Indictments and Informations.** Whether to permit the names of additional witnesses to be endorsed upon an information after the information has been filed is within the discretion of the trial court.

2. **Trial: Witnesses: Proof.** In order to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited.

3. **Trial: Evidence: Juries.** A motion in limine is only a procedural step to prevent prejudicial evidence from reaching the jury. It is not the office of such motion to obtain a final ruling upon the ultimate admissibility of the evidence.

4. **Trial: Evidence: Proof: Appeal and Error.** Because a ruling on a motion in limine is not a final ruling on the admissibility of evidence and does not present a question for appellate review, a question concerning the admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection or offer of proof during trial.

5. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

6. **Sentences: Appeal and Error.** Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits.

Appeal from the District Court for Douglas County, J Russell Derr, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, Alexander D. Sycher, and Tamara T. Mosby for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Nolan M. King appeals his convictions and sentences for manslaughter and use of a deadly weapon other than a firearm to commit a felony. At King's jury trial, the State offered evidence that King caused fatal head injuries to Rodney Pettit II during an altercation at a bar. On appeal, King argues that the district court erred by allowing the testimony of witnesses the State endorsed 2 weeks prior to trial, by prohibiting King from questioning the State's witnesses about the victim's toxicology report, and by imposing improper and excessive sentences. King also argues that the evidence was insufficient to support his conviction for use of a deadly weapon other than a firearm to commit a felony. We find no merit to King's arguments and therefore affirm.

## I. BACKGROUND

The State presented evidence at trial that on an evening in February 2022, King and a group of friends went to a bar in downtown Omaha, Nebraska. Pettit was also at the bar. At one point during the evening, Pettit walked past King's then-girlfriend, Wynter Knight, and made contact with her as he passed by. According to trial testimony, King became angry

once he learned of the interaction between Pettit and Knight. Sometime later that evening, King encountered Pettit in the bar, knocked him to the ground, and then continued to attack him. Pettit was transported to a hospital and died from his injuries the following day.

The State charged King with second degree murder and use of a deadly weapon other than a firearm to commit a felony. Following trial, a jury found King guilty of manslaughter and use of a deadly weapon other than a firearm to commit a felony. The district court sentenced King to imprisonment for 19 years 364 days to 20 years on the manslaughter conviction and for 19 to 20 years on the use of a deadly weapon conviction. The district court ordered the sentences to run consecutively. King filed a timely appeal.

Additional procedural history and evidence, when relevant, will be discussed in the analysis section below.

## II. ASSIGNMENTS OF ERROR

King assigns (1) that the district court erred in permitting testimony of two witness who were endorsed by the State less than 30 days before trial; (2) that the district court abused its discretion by sustaining a motion in limine filed by the State, which prohibited King from questioning the State's witnesses regarding the victim's toxicology results; (3) that the evidence was insufficient to support his conviction of use of a deadly weapon other than a firearm to commit a felony; and (4) that the sentences imposed by the district court failed to comply with Neb. Rev. Stat. § 83-1,110(1)(c) (Supp. 2023) and were otherwise excessive.

## III. ANALYSIS

### 1. ENDORSEMENT OF WITNESSES

#### (a) Additional Background

Fourteen days before King's trial was scheduled to begin, the State filed a motion for leave to endorse additional witnesses it had not endorsed when the information was filed. At

a hearing on the State's motion, King objected to the endorsement of the additional witnesses. King argued that because the additional witnesses were not endorsed when the information was filed and were not endorsed within 30 days of trial, the witnesses should not be permitted to testify at trial. The district court overruled King's objection and sustained the State's motion to endorse. King did not ask for a continuance.

Later at trial, when the State called two of the additional witnesses to testify, King renewed his objections. The district court again overruled King's objections as to both witnesses and permitted their testimony. The witnesses testified to their observations of the altercation between King and Pettit. King cross-examined the witnesses but again did not move for a continuance.

### (b) Standard of Review

[1] Whether to permit the names of additional witnesses to be endorsed upon an information after the information has been filed is within the discretion of the trial court. *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006).

### (c) Analysis

The endorsement of witnesses in criminal trials is governed by Neb. Rev. Stat. § 29-1602 (Cum. Supp. 2022), which provides:

> All informations shall be filed in the court having jurisdiction of the offense specified therein, by the prosecuting attorney of the proper county as informant. The prosecuting attorney shall subscribe his or her name thereto and endorse thereon the names of the witnesses known to him or her at the time of filing. After the information has been filed, the prosecuting attorney shall

endorse on the information the names of such other witnesses as shall then be known to him or her as the court in its discretion may prescribe, except that if a notice of aggravation is contained in the information as provided in section 29-1603, the prosecuting attorney may endorse additional witnesses at any time up to and including the thirtieth day prior to the trial of guilt.

King argues that the district court erred in permitting the trial testimony of the two additional witnesses because both witnesses "were endorsed by the State less than thirty days before trial." Brief for appellant at 18. Language in some of our cases suggests that 30 days prior to trial is a significant milestone in the analysis of whether additional witnesses may be endorsed. In *State v. Smith*, 292 Neb. 434, 467-68, 873 N.W.2d 169, 197 (2016), for example, we said that § 29-1602 "generally requires the prosecution to endorse the names of all known witnesses in the information at the time it is filed, but permits the endorsement of additional witnesses up to and including 30 days prior to trial." Other language from our case law, however, seems to say that the trial court continues to have discretion to allow for the endorsement of additional witnesses through the pendency of trial. In the same *Smith* case quoted above, we said that a trial court has discretion to permit additional witnesses to be endorsed "even after the trial has begun, providing doing so does not prejudice the rights of the defendant." 292 Neb. at 468, 873 N.W.2d at 198. See, also, *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019).

Section 29-1602 includes a reference to 30 days prior to trial, but that language only applies to cases in which "a notice of aggravation is contained in the information." The information in this case contained no such notice. In cases like this one, we see nothing in the statutory language that creates a deadline 30 days prior to trial or, indeed, ascribes any particular significance to that period of time. Instead, we read the statute to provide a trial court with continuing discretion

to permit the endorsement of additional witnesses. Whether to permit the endorsement of the additional witnesses in this case was thus committed to the district court's discretion.

We find that the district court did not abuse its discretion here. We have said that the purpose of § 29-1602 is to notify the defendant as to witnesses who may testify and provide an opportunity to investigate them. See *State v. Cebuhar*, 252 Neb. 796, 567 N.W.2d 129 (1997). We have also said that in order to obtain a reversal on the grounds of an additional endorsement of witnesses, the defendant must have requested a continuance at trial and must demonstrate prejudice. See *id.* See, also, *State v. Brandon*, 240 Neb. 232, 481 N.W.2d 207 (1992). In this case, King asserts that his counsel did not have adequate time to prepare to cross-examine these witnesses. But King's counsel did cross-examine these witnesses, and King offers no explanation as to what his counsel could or would have done differently with more time to prepare. And, in any event, King did not ask that the case be continued so that he could have more time to investigate the witnesses. We thus find no grounds on which to reverse the district court's order permitting the endorsement of additional witnesses.

## 2. Motion in Limine

### (a) Additional Background

Prior to trial, the State filed a motion in limine that sought to preclude King from discussing or adducing evidence of a toxicology report regarding Pettit. The toxicology report showed that on the night Pettit was attacked, he had an elevated blood alcohol concentration and tested positive for amphetamines and opioid analgesics. The State argued the toxicology report was irrelevant, unfairly prejudicial, and amounted to hearsay. The district court, in a written order, sustained the State's motion in limine, stating, in part, that "[a]s to the cause of death, there is no evidence that the substances found in . . . Pettit's system at the time of his death contributed, in any manner, to his death. . . . The autopsy

report states the death of . . . Pettit was caused by 'blunt force head injuries.'"

At trial, King did not attempt to question any witnesses regarding the toxicology report.

### (b) Analysis

As noted above, King assigns as error that the district court abused its discretion by "granting the State's motion in limine prohibiting King from questioning the State's witnesses regarding Pettit's toxicology report at trial."

The Nebraska Evidence Rules provide:

> (1) Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:
>
> . . . .
>
> (b) In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

Neb. Rev. Stat. § 27-103 (Reissue 2016).

[2-4] Interpreting § 27-103(1)(b), we have said that in order to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited. See *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008). Such an offer of proof must be made at trial. See *id.* A motion in limine is only a procedural step to prevent prejudicial evidence from reaching the jury. *Id.* It is not the office of such motion to obtain a final ruling upon the ultimate admissibility of the evidence. *Id.* Because a ruling on a motion in limine is not a final ruling on the admissibility of evidence and does not present a question for appellate review, a question concerning the admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection or offer of proof during trial. See *id.*

Because King made no attempt at trial to question witnesses regarding Pettit's toxicology report, he cannot now complain that he was prohibited from doing so. This issue was not preserved for appellate review, so we do not address it.

### 3. SUFFICIENCY OF EVIDENCE

King's sufficiency of the evidence challenge is narrow. He does not contend that the evidence was insufficient to support his conviction for manslaughter. He argues only that the evidence was insufficient to support his conviction for use of a deadly weapon to commit a felony. The State's theory for that charge was that King struck Pettit with a bottle. King does not dispute that a bottle can qualify as a deadly weapon. Instead, he argues only that there was insufficient evidence that he actually struck Pettit with a bottle.

### (a) Additional Background

At trial, the State offered evidence that after King learned of the interaction between Pettit and Knight, King grabbed a pool cue and began to pace. Surveillance footage showed that King eventually returned the pool cue and then obtained two beer bottles. King gave one of the bottles to a member of his group and kept a bottle for himself. King stayed with members of his group for a short time, then walked away carrying the bottle. Shortly thereafter, King encountered and attacked Pettit.

Knight testified at trial. She testified that Pettit "brushed past" her and put his arm around her waist and that King learned of the interaction. She did not see King attack Pettit, but emerged from the bathroom to discover a man on the floor. Knight was rushed outside by her friends and did not learn details regarding the confrontation that night. Knight testified that she woke up the next day to text messages from one of her friends who was at the bar. The friend had seen pictures on a social media site connecting King's group to the attack on Pettit.

Knight testified that upon receiving the messages, she talked to King. According to Knight, King told her that one of Knight's friends had identified Pettit to him and that King found Pettit and "hit him over the head with his beer bottle and then punched him."

Four other witnesses testified that they saw King attack Pettit with a bottle. King's counsel attempted to impeach or otherwise undermine this testimony. A witness who testified on direct examination that he was walking behind Pettit just prior to the altercation admitted, after viewing surveillance footage, that he was actually in front of Pettit. Another witness testified on cross-examination that she turned toward the incident after Pettit had already hit the floor. King also elicited testimony from a police officer that one of the witnesses who testified to seeing King hit Pettit with a bottle stated in an interview following the incident that she did not see King use a bottle. Another witness testified that she saw King hit Pettit with a bottle in the back of his head despite video surveillance evidence indicating that King and Pettit met face-to-face.

A security guard who was nearby King and Pettit during the incident testified that he did not see King use a bottle. In addition, the video surveillance evidence is inconclusive as to whether King struck Pettit with a bottle.

Evidence at trial indicated that the bar remained open for some time after the altercation between King and Pettit. Before police secured the scene, bar staff cleaned some of the area where Pettit was attacked. Pieces of a broken beer bottle were later located on the floor near where Pettit was attacked and in a dustpan in the bar storage room. King's fingerprints were not recovered from the evidence collected at the scene.

After Pettit died, an autopsy was performed to determine the cause of death. The forensic pathologist who performed the autopsy testified at trial. The autopsy revealed that Pettit had several blunt force injuries to his head and face. The forensic pathologist testified that Pettit sustained "several"

nonsurvivable injuries and that the cause of death was blunt force head injuries. The forensic pathologist testified that all of Pettit's external injuries were consistent with getting struck by a fist or an object like a bottle.

### (b) Standard of Review

[5] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. *State v. Lorello*, 314 Neb. 385, 991 N.W.2d 11 (2023). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

### (c) Analysis

King argues there was insufficient evidence he struck Pettit with a bottle. King points out that the security guard testified that he did not see King use a bottle and that there was no DNA or fingerprint evidence suggesting he used a bottle. Additionally, King argues that the testimony of the witnesses who claimed to see a bottle was inconsistent or contradicted by other evidence. As we will explain, King's argument is without merit.

King's reliance on the security guard's testimony and the absence of DNA or fingerprint evidence is unavailing. We recently rejected the notion that a defendant can establish that evidence to support a conviction was insufficient by pointing to the absence of certain types of evidence. See *id.* As we explained, our standard of review directs us to evaluate the evidence that was actually before the fact finder rather than ponder "potentially incriminating facts that were lacking." *Id.* at 401, 991 N.W.2d at 22.

As for the evidence that was actually presented, we find that it, viewed in the light most favorable to the prosecution, would allow a rational jury to conclude that King struck Pettit with a bottle. As we have discussed, the record included evidence that King was holding a bottle moments before his encounter with Pettit and that Pettit's injuries were consistent with being struck in the head with a bottle. On top of these facts, Knight testified that King *admitted* to striking Pettit with a bottle. Although other evidence might have also supported the State's theory that King struck Pettit with a bottle, we find that these facts alone would allow a rational jury to conclude that King struck Pettit with a bottle. King's argument that we cannot consider the testimony of the witnesses who claimed to see King strike Pettit with a bottle appears to invite us to reweigh evidence and pass on witness credibility contrary to our standard of review. See *Lorello, supra*. Given our conclusion that the conviction was amply supported by other evidence, however, we need not make further comment on that argument.

### 4. Sentencing

#### (a) Additional Background

At King's sentencing hearing, the district court stated that it had received and read the presentence investigation report and victim impact letters. King's counsel read aloud a note from King and offered arguments concerning various mitigating factors for the court to consider in its sentencing. The district court ultimately sentenced King to imprisonment for consecutive terms of 19 years 364 days to 20 years and of 19 to 20 years.

#### (b) Standard of Review

[6] Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Johnson*, 308 Neb. 331, 953 N.W.2d 772 (2021).

### (c) Analysis

King challenges his sentences in two ways. He first argues that his sentences do not comply with recent amendments to § 83-1,110. He also argues that his sentences were otherwise excessive.

### (i) § 83-1,110

King argues that recent amendments to § 83-1,110 required the district court to sentence King "to an indeterminate sentence in which King would become parole eligible after King served 80 percent of the time until King's mandatory discharge date." Brief for appellant at 29.

In *State v. Evans, ante* p. 943, ___ N.W.3d ___ (2024), we rejected an identical argument. In *Evans*, we explained that the recent amendments to § 83-1,110 affect a defendant's parole eligibility calculations but do not alter the permissible sentencing range. For the same reasons, we also reject King's argument that his sentences were inconsistent with § 83-1,110.

### (ii) Excessive Sentences

Lastly, King argues that the district court abused its discretion by imposing excessive sentences. King does not dispute that he was sentenced within the statutory limits set forth in Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). He instead argues the district court failed to adequately consider certain mitigating factors when sentencing him.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense,

as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

King argues that the district court failed to adequately consider the relevant sentencing factors enumerated above and based its sentences primarily on the nature of the offenses. In so arguing, King highlights certain mitigating factors in the presentence investigation report, including his documented mental health issues, lack of criminal history, participation in rehabilitative programs with the Department of Correctional Services, assessments that show he is at a low risk to reoffend, and his acceptance of responsibility for Pettit's death. Based on the record, we find no abuse of discretion by the district court.

There is nothing in the record to suggest that the district court did not consider the mitigating factors King identifies. King asserts that if the district court had considered the mitigating information he identifies, it would have imposed substantially shorter sentences. In so arguing, however, King is essentially urging that the district court should have weighed the relevant sentencing information differently. We recall, however, that it is not this court's function to conduct a de novo review of the record to determine what sentence we would impose, see *State v. Horne*, 315 Neb. 766, 1 N.W.3d 457 (2024), and that the district court was also obligated to consider the nature of King's crimes. With those considerations in mind, we cannot say that the district court abused its discretion in sentencing King.

## IV. CONCLUSION

We find no merit to King's arguments and therefore affirm his convictions and sentences.

Affirmed.