IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. NELSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KEVIN R. NELSON, APPELLANT.

Filed March 4, 2025.    No. A-24-406.

Appeal from the District Court for Buffalo County: RYAN C. CARSON, Judge. Affirmed in part, and in part vacated and remanded for resentencing.

Joseph L. Howard, of Dornan, Troia, Howard, Breitkreutz, Dahlquist & Klein, P.C., L.L.O. for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

MOORE, PIRTLE, and WELCH, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Kevin R. Nelson appeals his convictions and sentences for first degree sexual assault of a child and incest in the district court for Buffalo County. Based on the reasons that follow, we affirm both convictions and affirm his sentence for first degree sexual assault of a child. However, because the district court committed plain error in the sentence imposed for incest, we vacate that sentence and remand the cause for resentencing on the incest conviction only.

## II. BACKGROUND

### 1. PROCEDURAL HISTORY

On November 15, 2023, the State filed a third amended information charging Nelson with one count of first degree sexual assault of a child, a Class IB felony, and one count of incest, a

Class IIA felony. The sexual assaults were alleged to have occurred between May 1, 2022, and December 7, 2022. The victim was Nelson's daughter, S.N., born October 2018. The first degree sexual assault of a child charge also alleged that Nelson had a prior conviction from 2019 for attempted first degree sexual assault. Nelson pled not guilty to the charges.

Prior to trial, the State provided notice of its intent to offer S.N.'s forensic interview into evidence pursuant to the medical diagnosis or treatment exception to the hearsay rule. Nelson objected and argued the exception was inapplicable. Following a hearing on the matter, the court entered an order finding the forensic interview was admissible under the medical diagnosis or treatment exception.

Prior to opening statements in Nelson's jury trial, Nelson renewed his hearsay objection to S.N.'s forensic interview. Both parties presented evidence. The forensic interview was offered into evidence by the State and Nelson did not object; the court specifically asked defense counsel if he had any objection and he indicated he did not.

After both parties rested, the case was submitted to the jury, which returned a verdict of guilty on both counts. The district court accepted the jury's verdict and adjudged Nelson guilty of the offenses.

At the sentencing hearing, the State offered into evidence Nelson's prior conviction for attempted first degree sexual assault, which the court found was valid for enhancement purposes. The court sentenced Nelson to 25 to 40 years' imprisonment for first degree sexual assault of a child and to 20 to 20 years' imprisonment for incest, to be served concurrently.

### 2. EVIDENCE PRESENTED AT TRIAL

Nelson and S.N.'s mother, T.F., began dating in October 2017, and S.N. was born in October 2018. Nelson and T.F.'s relationship ended in late 2019 or early 2020, at which time Nelson moved in with his parents. T.F. later filed for custody of S.N., and the court issued an order granting her custody and granting Nelson parenting time.

In October 2021, Nelson advised T.F. that S.N. had been touching her genital area and asked T.F. to speak to her about it. T.F. told Nelson she had never seen S.N. do that at her house.

In May 2022, Nelson and his girlfriend moved into an apartment together. Around that same time, T.F.'s mother, V.F., was providing daycare for S.N. and noticed S.N. touching her genital area. She told T.F. what she had observed. By July 2022, V.F. and T.F. both noticed that S.N. was touching her genital area more often, especially after parenting time with Nelson. Around the same time, S.N. told V.F. "daddy touched her jay-jay." S.N. also made a disclosure to T.F. T.F. was concerned about S.N.'s behavior but did not address it with Nelson at the time because S.N. would say she was kidding or could not talk to T.F.

In November 2022, S.N. made more descriptive statements to V.F. and showed her where Nelson had touched her. S.N. also disclosed more information regarding Nelson to T.F. Following a trip to Minnesota with Nelson, S.N. told T.F. and V.F. she had a good time because "Daddy didn't touch [her] jay-jay this time."

On December 6, 2022, S.N. had an appointment with her doctor for an unrelated issue. During the appointment T.F. discussed S.N.'s behavior of touching her genital area with the doctor, who told her that such behavior was not normal. S.N.'s doctor called the child abuse hotline and

instructed T.F. to go to the police, which she did. A police officer arranged for S.N. to have a forensic interview, which took place the next day.

The forensic interview was conducted by Morgan Wicht. During the interview, S.N. told Wicht that Nelson watches a show and then touches her "jay-jay" and she pointed to her genital area. She explained that Nelson wiggles his fingers around and makes it sore, and when she tells him to stop, he tells her to "shut up." S.N. further stated in the interview that Nelson touches her butt with "hard things," including something that looks like a rock, and that he "puts it in" and "takes it out." S.N. also identified the areas of her body that Nelson touches on a drawing of a female body and she identified her genital area and butt. She told Wicht she feels nervous and sad when Nelson touches these areas. The video of the forensic interview was played for the jury during trial.

At the conclusion of S.N.'s interview, Wicht recommended that she undergo a medical examination. No injuries or physical evidence was found during S.N.'s examination. The doctor who performed the examination testified she was not surprised by the results because physical evidence of sexual abuse is rare, especially where, as here, several days or weeks had passed since the last incident.

Police officers executed a search warrant at Nelson's apartment the same day as S.N.'s medical examination. In Nelson's bedroom the officers found sex toys on the floor by the bed and in a cubby on the television stand in Nelson's bedroom, and a handkerchief containing rocks and other items on the nightstand next to the bed. Thereafter, Nelson was interviewed by a police officer and informed of the allegations that he had touched S.N. inappropriately. He denied the allegations. He also consented to a search of his cell phone and provided a DNA sample.

After the forensic interview, S.N. did not have any parenting time with Nelson. T.F. testified that S.N. was touching her genital area less often and after a few months she completely stopped.

At trial, S.N. was shown the body drawing that was used at the forensic interview and she identified where her genital area, which she called her "jay-jay," and butt are located. When asked what Nelson does to her genital area and butt, she stated that he moves his hand back and forth and puts "the mermaid and the little rock and thing that goes back and forth" inside her. She was then shown pictures of the sex toys and rocks found in Nelson's bedroom and she recognized several of them, calling them a mermaid, a dolphin, and a whale, and identified one of the rocks. She testified that Nelson puts these items in her genital area and butt and moves them back and forth.

After the State rested, Nelson and his mother testified for the defense. Both witnesses testified that Nelson's mother was S.N.'s primary caretaker when Nelson had parenting time and that Nelson was never alone with S.N. Specifically, Nelson testified he never spent any time alone with S.N. between May and December 2022, the dates alleged in the third amended information. Nelson and his mother also suggested that T.F. made up the allegations against Nelson because she was upset about the trip to Minnesota in November 2022.

## III. ASSIGNMENTS OF ERROR

Nelson assigns that the district court erred in (1) admitting S.N.'s forensic interview into evidence, violating his right to confrontation, (2) failing to find there was insufficient evidence to

support a guilty verdict beyond a reasonable doubt, and (3) imposing excessive sentences. Nelson also assigns that cumulative errors throughout the trial denied him a fair trial, and that his trial counsel provided ineffective assistance "for failing to elicit exculpatory evidence and consult and hire expert witnesses."

## IV. STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Rivera-Meister*, 318 Neb. 164, 14 N.W.3d 1 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021). A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review. *Id.* Whether a sentence is authorized by statute presents a question of law, which we review de novo. *Id.*

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark, supra.* In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. FORENSIC INTERVIEW

Nelson assigns that the district court erred in admitting S.N.'s forensic interview into evidence, violating his right to confrontation. Although Nelson assigns that the admission of the forensic interview violated his right of confrontation, he fails to argue this assignment of error in his appellate brief. The caption in the argument section of his brief states, "The admission of the [forensic] interview violated the hearsay rule," and the argument that follows asserts that the forensic interview was hearsay and the medical diagnosis or treatment exception did not apply, as the district court found. Brief for appellant at 12. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Clark, supra*. Accordingly, because Nelson does not argue what he assigned as error, we need not address it further.

We also note that Nelson did not raise a confrontation violation in the district court and therefore, cannot raise the issue for the first time on appeal. See *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019) (an appellate court will not consider an issue on appeal that was not presented to or passed upon by trial court).

Nelson's first assignment of error fails for an additional reason. As previously stated, when the forensic interview was offered into evidence during trial, Nelson did not object. Although he objected to the admission of the forensic interview prior to trial and again prior to opening statements, he did not renew his objection. Where there has been a pretrial ruling regarding the admissibility of evidence, a party must make a timely and specific objection to the evidence when it is offered at trial in order to preserve any error for appellate review. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021). Because Nelson did not object to the admission of the forensic interview when it was offered at trial, he did not preserve for appeal any evidentiary error that resulted from its admission.

### 2. SUFFICIENCY OF EVIDENCE

Nelson next assigns that the evidence was insufficient to support his convictions because there was no physical evidence of abuse found on S.N. during her medical examination, S.N.'s testimony was inconsistent with her forensic interview, T.F. provided conflicting information about the timeline of S.N.'s behavior of touching herself, there was no direct evidence showing Nelson's intent or involvement in the crimes, and certain exculpatory evidence was overlooked. Nelson basically challenges the credibility of S.N.'s testimony and T.F.'s testimony, and the strength of the evidence against him. Nelson is asking us to reweigh the evidence, which we will not do.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* We conclude that the jury could have found the elements of first degree sexual assault of a child and the elements of incest had been proved beyond a reasonable doubt.

A person commits sexual assault of a child in the first degree when he subjects another person under 12 years of age to sexual penetration and the actor is a least 19 years of age or older. See Neb. Rev. Stat. § 28-319.01(1)(a) (Reissue 2016). "Sexual penetration" includes "any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical, nonhealth, or nonlaw enforcement purposes." See Neb. Rev. Stat. § 28-318(6) (Cum. Supp. 2022).

Incest, as applied in the present case, is committed when any person knowingly engages in sexual penetration with his or her child. See, Neb. Rev. Stat. § 28-702 (Reissue 2016); Neb. Rev. Stat. § 28-703(1) (Reissue 2016).

The evidence was uncontested that S.N. was 3 and 4 years old during the timeframe at issue, and Nelson was over the age of 19. There was also no dispute that S.N. is Nelson's biological daughter.

We conclude there was also sufficient evidence for the jury, as the trier of fact, to find that Nelson subjected S.N. to sexual penetration. During S.N.'s forensic interview, she told Wicht that Nelson touched her genital area, which she called her "jay-jay," and she pointed to her genital area. She explained that Nelson wiggles his fingers around, making her genital area sore. S.N. also told Wicht that Nelson touches her butt with "hard things," including something that looks like a rock, and that he "puts it in" and "takes it out." S.N. also identified the areas of her body that Nelson touches on a drawing of a female body, indicating he touched her genital area and butt.

When S.N. testified at trial, she stated that Nelson moves his hand back and forth on her genital area and butt and puts "the mermaid and the little rock and thing that goes back and forth" inside her. She was shown the sex toys and rocks found in Nelson's bedroom and she recognized several of the sex toys, which she referred to as a mermaid, a dolphin, and a whale, as well as one of the rocks. She testified that Nelson puts these items in her genital area and butt and moves them back and forth.

S.N.'s testimony supports a finding that Nelson sexually penetrated S.N. The State is not required to corroborate a victim's testimony in cases of first degree sexual assault; if believed by the finder of fact, the victim's testimony alone is sufficient. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). The jury clearly made an implicit credibility finding when it found Nelson guilty of both charges. In reviewing a conviction for sufficiency of the evidence, we do not pass on the credibility of witnesses and instead we recognize that it is a matter for the fact finder. See *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024).

We conclude there was sufficient evidence to support Nelson's convictions of first degree sexual assault of a child and incest. This assignment of error fails.

### 3. EXCESSIVE SENTENCES

### (a) First Degree Sexual Assault of Child

Nelson assigns that the district court erred by imposing excessive sentences. Nelson was found guilty of first degree sexual assault of a child, a Class IB felony. See § 28-319.01(2). The State presented evidence of Nelson's prior conviction of attempted first degree assault, providing an enhancement to the charge, and making the minimum sentence a mandatory 25 years' imprisonment. *Id.* Statutory sentencing guidelines provide for a maximum sentence of life imprisonment for a Class IB felony. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022); § 28-319.01(3). Nelson was sentenced to 25 to 40 years' imprisonment. The sentence imposed by the district court was within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. King*, 316 Neb. 991, 7 N.W.3d 884 (2024). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7)

the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* It is not the appellate court's function to conduct a de novo review of the record to determine what sentence it would impose. *Id.*

Nelson argues that he provided several reasons at sentencing to justify a lower sentence, focusing on factors related to his risk assessments and circumstances. However, before sentencing Nelson, the court stated that it had reviewed the presentence investigation report. It explained to Nelson that there are numerous factors it must consider when imposing a sentence and it discussed several of them in relation to Nelson. The court also found that an enhancement to the charge based on Nelson's prior conviction of attempted first degree assault was proper and could not be ignored when imposing his sentence.

The comments made by the district court at sentencing indicate that it considered the appropriate factors. There is nothing in the record to suggest that it considered any irrelevant or inappropriate factors. Accordingly, the district court did not abuse its discretion in sentencing Nelson on the first degree sexual assault of a child conviction.

### (b) Incest

Nelson was also found guilty of incest, a Class IIA felony when the victim is under 18 years of age. See § 28-703(2). Statutory sentencing guidelines for a Class IIA felony provide for a maximum sentence of 20 years' imprisonment and no minimum sentence. § 28-105. The court sentenced Nelson to not less than 20 years' imprisonment and not more than 20 years' imprisonment. This sentence was within the statutory limits.

However, Neb. Rev. Stat. § 29-2204 (Cum. Supp. 2022) provides in part that when imposing a sentence for any class of felony other than a Class III, IIIA, or IV, the maximum term shall not be greater than the maximum limit provided by law, and the minimum term shall be any term of years less than the maximum term imposed by the court or the minimum term shall be the minimum limit provided by law. The State contends that the court's sentencing of Nelson for incest does not comply with § 29-2204 and is plain error. We agree. Here, Nelson received a term of 20 to 20 years' imprisonment, and the minimum term is not less than the maximum term, nor is it the minimum provided by law. See § 28-105. As such, the sentence imposed does not comply with § 29-2204. Accordingly, we vacate Nelson's sentence for the conviction of incest and remand the cause to the district court for resentencing on the incest conviction only.

### 4. CUMULATIVE TRIAL ERRORS

Nelson assigns that cumulative errors throughout the trial denied him a fair trial. However, Nelson did not argue this assigned error in his brief. As previously stated, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). Accordingly, because Nelson does not argue his assignment regarding cumulative errors, we need not address it further.

## 5. Ineffective Assistance of Counsel

Nelson assigns his trial counsel was ineffective "for failing to elicit exculpatory evidence and consult and hire expert witnesses." Brief for appellant at 7.

Whether a claim of ineffective assistance of counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024).

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id.* When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

The State contends that Nelson's assignment of error lacks the specificity we demand on direct appeal. We agree. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. German, supra*. As stated above, the necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.* Nelson's assignment of error does not identify the exculpatory evidence his counsel failed to elicit or the specific expert witnesses his counsel failed to consult or hire. Because Nelson's assignment of error is not sufficiently specific, we decline to address it.

## VI. CONCLUSION

We affirm Nelson's convictions for first degree sexual abuse of a child and incest. Further, we determine that his sentence for first degree sexual abuse of a child was not an abuse of discretion. However, because the sentence imposed for incest was plain error, we vacate that sentence and remand the cause to the district court for resentencing on the incest conviction only.

AFFIRMED IN PART, AND IN PART VACATED
AND REMANDED FOR RESENTENCING.