IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. GACH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DECH GACH, APPELLANT.

Filed May 19, 2026.    No. A-25-287.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

James K. McGough for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

MOORE, PIRTLE, and FREEMAN, Judges.

PIRTLE, Judge.

### INTRODUCTION

After a jury trial in the district court for Douglas County, Dech Gach was convicted of criminal conspiracy, murder in the first degree, and use of a deadly weapon to commit a felony. Gach appeals and assigns error to the sufficiency of the evidence to support his convictions and his sentences. For the reasons that follow, we affirm.

### BACKGROUND

On March 12, 2021, police officers responded to a shooting. Upon arrival, officers found a male victim on the porch of a residence with apparent multiple gunshot wounds. The victim was identified as Larry Thompson. He was transported to the University of Nebraska Medical Center, where he was pronounced deceased. Thompson's cause of death was the gunshot wounds in his left chest and left forearm.

- 1 -

"ShotSpotter" notified police officers that eight shots were fired around Thompson's apartment at 8 p.m. ShotSpotter uses acoustic sensors in geographical areas to detect gunfire and alert local officers to respond to those incidents. Law enforcement found seven shell casings near Thompson's apartment. A firearm analyst determined that all seven shell casings came from the same firearm, a 9-mm Glock.

Law enforcement reviewed video surveillance footage of the area and learned that the suspect vehicle involved in the homicide was a black Chevy Cruze. According to detectives, Christopher Trejo was known to drive the vehicle. Detectives contacted Trejo and his then-girlfriend, Marian Rodriguez, at Trejo's home. Trejo's vehicle was confiscated and searched. A .22 shell casing was found in the back pocket on the passenger side seat, and a black latex glove was found in the backseat.

Trejo and Rodriguez were transported to the police station for interviews. Rodriguez said that on the day of the homicide, Trejo had texted her and told her that he was turning off his phone. She acknowledged that Trejo had come to her house the day before the interview and told her that the police were investigating a homicide. She also said Trejo asked her to tell the police that he was with her on the day of that homicide.

Through a review of Trejo's text messages, officers determined he communicated with Gach about guns and other gang related matters. The text messages also revealed that Trejo planned to pick up Gach in Sioux City, Iowa, on March 12, 2021.

On March 30, 2021, officers interviewed Rumbek Augustino, who knew both Trejo and Gach. Augustino said that Trejo had driven him to Sioux City on the day of the homicide and had driven back to Omaha on the same date. Officers then went to Sioux City to interview Gach, and through a court order, obtained a DNA sample from Gach.

On November 10, 2022, the State filed an information charging Gach with one count of criminal conspiracy, a Class II felony; one count of murder in the first degree, a Class IA felony; and one count of use of a deadly weapon to commit a felony, a Class IC felony. The charges arose from the incident that occurred on March 12, 2021, wherein Gach allegedly conspired and then killed Thompson with a firearm.

Trial commenced on November 13, 2024. The evidence adduced at trial consisted of testimony from police officers, the investigating detectives, a firefighter-paramedic, forensic technicians, a forensic pathologist, an identification specialist, a forensic scientist, a forensic DNA analyst, and two eyewitnesses: Trejo and Augustino.

Trejo testified that on March 12, 2021, he traveled to Sioux City, Iowa, to pick up Gach and Gatluak Jiel. Gach had texted Trejo and told Trejo he would be bringing a "baby glizzy," which Trejo testified meant a smaller Glock. Trejo also explained that the group would obtain additional firearms once they returned to Omaha and picked up Augustino. Trejo said that at the time, only Gach had a gun, a compact "Glock 43," but once they arrived in Omaha, Jiel obtained a ".22 SIG" handgun.

Trejo testified that all four were members of the "Trip Set" gang and planned to drive neighborhoods to hunt opposing gang members. Augustino also testified that they planned to drive around neighborhoods occupied by "Crips" members, including the "Spencer Projects," where the homicide occurred. Trejo said they all turned their phones off right before the shooting occurred. Both Trejo and Augustino testified that Trejo stopped the vehicle near Thompson's apartment and

Augustino, Jiel, and Gach exited the vehicle and approached Thompson's apartment, where Gach shot Thompson multiple times. Trejo stated that after Thompson was shot, Trejo drove back to his house to check in with his probation officer before he drove Augustino, Jiel, and Gach back to Jiel's house in Sioux City.

A forensic scientist concluded that there was gunshot residue on the outside of the glove collected from Trejo's vehicle. A DNA analyst also determined there was a mixture of four DNA profiles inside the glove. The analyst concluded that 79 percent of the DNA mixture belonged to the major contributor, and that Gach could not be excluded as the major contributor in the profile. She concluded that it was 14.1 nonillion percent more likely that the profile originated from Gach and three unknown, unrelated individuals than four unrelated individuals.

A digital forensics technician testified that Trejo's Chevy Cruze had an OnStar system. An OnStar system stores vehicle data and, depending on the module, can also store phone data that synced to the vehicle. The OnStar data showed the vehicle traveled to Sioux City and returned to Omaha. The OnStar data showed the vehicle drove to the Spencer Housing area, consistent with video surveillance and Trejo's testimony. However, the OnStar data did not show data at the time of the homicide, which the technician suggested meant the system could have been turned off. There were also five phones that had synced to the vehicle, including Gach's phone; however, Gach's phone was not synced to the vehicle when he made a call at 7:50 p.m. The forensic technician testified that even if a phone stopped being synced with a vehicle, it did not mean that the person or the phone left the vehicle.

Brandon Hahn, a detective, testified to the "Life360" data that Omaha police acquired from Trejo's phone. Life360 is a mobile application that allows location sharing with family members and friends. Hahn also testified to the "iCloud metadata" collected from Gach's iCloud account. The data revealed that Trejo turned his phone back on at around 8:14 or 8:15 p.m. after the homicide took place. The data also revealed that Gach's phone activity resumed at around 8:34 p.m.

The case was submitted to the jury for deliberations, and the jury found Gach guilty of criminal conspiracy, first degree murder, and use of a deadly weapon to commit a felony. The district court accepted the jury's verdict and then formally found Gach guilty of the charges. The court ordered a presentence investigation report (PSR) and set the matter for sentencing.

At sentencing, the State and defense counsel provided argument as to the appropriate sentence to be imposed. Gach also said that he was "due for a change" and that he would utilize his time in prison wisely.

The district court made the following comments:

> Mr. Gach, the Court has reviewed your [PSR], and obviously, based on your conviction, . . . and the fact that you were 15 years old at the time of the murder, the Court is not only required to consider the sentencing factors that are applicable to you, the Court is also . . . required by Statute 28-105.02 to consider mitigating factors as it relates to you, [such as your] age, and education, environment, [and] the fact that you were 15 at the time.
>
> The Court has also considered the [Confidential Psychological Evaluation and Violence Risk Assessment] report from Dr. [Kirk A.] Newring. And although he may have been missing some of the background, the Court believes it has a pretty clear understanding

or at least the best understanding the Court can have of you and your circumstance, and there does have to be a balance between punishment and potential rehabilitation.

And I will say, in my 20 years of being on the bench, you are the youngest person that I have had convicted of murder, as well as the two other charges, and I'm trying to strike a balance between your age at the time, but also respect and accountability for Mr. Thompson, who played no role in this. Who did not deserve. . . .

Mr. Thompson was just going about his daily and/or nightly activities, just being on the phone, and that has to be remembered, and that has to be accounted for.

On count I, criminal conspiracy, the court sentenced Gach to 12 years to 12 years and 1 day; on count II, murder in the first degree, the court sentence Gach to 70 years to 70 years and 1 day; and on count III, use of a deadly weapon to commit a felony, to 5 years to 5 years and 1 day, with all sentences to run consecutive to each other. Gach now appeals.

## ASSIGNMENTS OF ERROR

Gach assigns, restated and reordered, (1) the evidence was insufficient to support the convictions as the cellphone evidence demonstrated that Gach was not in the vehicle when it departed and traveled to the location of the murder and (2) that his sentence was excessive.

## STANDARD OF REVIEW

In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Nejezchleb*, 33 Neb. App. 696, 21 N.W.3d 703 (2025). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id.* An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*Sufficiency of Evidence.*

Gach argues that the evidence presented at trial was insufficient to find him guilty of his convictions beyond a reasonable doubt. Gach was convicted of criminal conspiracy, murder in the first degree, and use of a deadly weapon to commit a felony. He specifically argues that there was insufficient evidence to show that he committed the murder as his cellphone data suggests he could not have been involved.

The jury was tasked with deciding whether to convict Gach of murder in the first degree, criminal conspiracy, and use of a deadly weapon to commit a felony. See, Neb. Rev Stat. § 28-303 (Cum. Supp. 2024); Neb. Rev. Stat. § 28-202 (Cum. Supp. 2024); Neb. Rev. Stat. § 28-1205 (Cum. Supp. 2024). A person is guilty of criminal conspiracy if the person intends to promote or facilitate

the commission of a felony, agrees with one or more persons to commit that felony, and then the person, or a coconspirator, commits an overt act furthering the conspiracy. *State v. Nave*, 284 Neb. 477, 821 N.W.2d 723 (2012). Use of a deadly weapon to commit a felony occurs when a person uses a firearm to commit any felony which may be prosecuted in a court of this state. See § 28-1205.

> A person commits murder in the first degree
> if he or she kills another person (1) purposely and with deliberate and premeditated malice, or (2) in the perpetration of or attempt to perpetrate any sexual assault in the first degree, arson, robbery, kidnapping, hijacking of any public or private means of transportation, or burglary, or (3) by administering poison or causing the same to be done; or if by willful and corrupt perjury or subornation of the same he or she purposely procures the conviction and execution of any innocent person.

§ 28-303.

In a criminal case, the evidence upon which a jury may rely in making its finding may be direct, circumstantial, or a combination thereof. *State v. Escamilla*, 291 Neb. 181, 864 N.W.2d 376 (2015). Circumstantial evidence is not inherently less probative than direct evidence. *Id.* In finding a defendant guilty beyond a reasonable doubt, a fact finder may rely upon circumstantial evidence and the inferences that may be drawn therefrom. *Id.*

Viewing the evidence in the light most favorable to the State and considering the statutory elements of the crimes charged, we conclude there was sufficient evidence for a rational trial of fact to convict Gach on all counts.

Trejo provided testimony that Gach was affiliated with a gang and that they planned to hunt down opposing gang members on March 12, 2021. Text messages between Gach and Trejo showed their discussion of the trip to Omaha, that Gach would be bringing a firearm, and their plan to obtain more firearms in Omaha. Augustino also provided testimony that the group was affiliated with a gang and corroborated Trejo's testimony that they drove around an opposing gang's territory looking for someone to kill.

Forensic technicians testified that Trejo's vehicle, Life360 application, and phone records all supported Trejo's testimony that he traveled to Sioux City on March 12, 2021, to pick up Gach and Jiel. The data also corroborates Trejo's testimony that the group returned to Omaha and drove through various neighborhoods, including the Spencer Projects, seeking a target. The evidence further supported Trejo's assertion that all participants turned their phones off before the homicide and then turned their phones back on after the homicide. The OnStar data stopped recording the vehicle's activity at 7:47 p.m., Gach's phone stopped showing activity around 7:50 p.m., and his phone resumed activity approximately 30 minutes after the homicide took place.

Trejo and Augustino both testified that Gach was the only one who fired any shots and that Gach shot and killed Thompson. Only seven shell casings were found at the scene of the crime, and the firearm analyst testified that the shell casings came from the same firearm. The glove found in Trejo's vehicle tested positive for gunshot residue on the outside, and the DNA analyst testified that the DNA mixture found inside the glove was 14.1 nonillion times more likely to originate from Gach and three unknown, unrelated individuals than four unrelated individuals.

Although Gach argues that his phone records suggest he left the vehicle at 7:50 p.m. to make a phone call and, therefore, could not have committed the murder, a rational jury could find that Gach made a phone call, then turned his phone off, shot Thompson seven times, and turned his phone back on later in an attempt to hide his involvement in the crime. Furthermore, there is other evidence to suggest that Gach conspired with Trejo, Augustino, and Jiel to use firearms to commit murder in a rival gang's neighborhood. As such, the evidence is sufficient to uphold Gach's convictions for murder in the first degree, criminal conspiracy, and use of a deadly weapon to commit a felony.

*Excessive Sentences.*

Gach assigns that the district court abused its discretion by imposing an excessive sentence because Gach was only 15 years old at the time of the murder and the court failed to adequately consider the factors in Neb. Rev. Stat. § 28-105.02 (Reissue 2016).

Gach was convicted of criminal conspiracy, a Class II felony; murder in the first degree, a Class IA felony; and use of a deadly weapon to convict a felony, a Class IC felony. See §§ 28-202, 28-303, and 28-1205. A Class II felony is punishable by a mandatory minimum of 1 year's imprisonment to a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2025). A Class IA felony, for a person under 18 years of age, is punishable by a mandatory minimum of 40 years' imprisonment to a maximum of not greater than life imprisonment. Neb. Rev. Stat. § 28-105.02. A Class IC felony is punishable by a mandatory minimum of 5 years' imprisonment to a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105. Gach's sentences are within statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Russell*, 299 Neb. 483, 908 N.W.2d 669 (2018). Relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.*

Because Gach was under the age of 18 when he committed a Class IA felony, § 28-105.02 dictates that the sentencing judge must also consider mitigating factors, such as the defendant's (1) age at the time of the offense, (2) impetuosity, (3) family and community environment, and (4) ability to appreciate risks and consequences of the conduct, as well as (5) the outcome of a comprehensive mental health evaluation of the defendant conducted by an adolescent mental health professional licensed in Nebraska. See *State v. Russell, supra.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. King*, 316 Neb. 991, 7 N.W.3d 884 (2024).

Gach asserts that the court abused its discretion by sentencing Gach to a sentence "175 percent greater" than the sentence that Newring, in his psychological evaluation and violence risk assessment, indicated would be sufficient but not greater than necessary to account for his brain development and maturation. In so arguing, Gach highlights certain mitigating factors in this

assessment, including his age at the time of the offense, his aggression questionnaire score, his experiences with interpersonal violence and gang violence, his ability to appreciate the risks and consequences of his actions, his intellectual capacity, and his mental health evaluation.

The district court stated that in preparation for sentencing, it reviewed the PSR, Newring's report, and the required factors of § 28-105.02. There is nothing in the record to suggest that the district court did not consider the mitigating factors Gach identifies. Gach asserts that if the district court had considered the mitigating information he identifies, it would have imposed substantially shorter sentences. Gach is essentially urging that the district court should have weighed the relevant sentencing information differently. However, that is not this court's function to conduct a de novo review of the record to determine what sentence should be imposed. See *State v. King, supra.* With those considerations in mind, we cannot say that the district court abused its discretion in sentencing Gach.

CONCLUSION

For the reasons set forth above, we affirm Gach's convictions and sentences.

AFFIRMED.