IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MCCLURE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JASON MCCLURE, APPELLANT.

Filed April 15, 2025.    No. A-24-634.

Appeal from the District Court for Sarpy County: MICHAEL A. SMITH, Judge. Affirmed as modified.

Megan E. Shupe, of Reagan, Melton & Delaney, L.L.P., for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

MOORE, PIRTLE, and WELCH, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

After accepting a plea agreement, Jason McClure was convicted of attempted first degree assault, robbery, and first degree false imprisonment. The district court for Sarpy County sentenced him to a cumulative 10 to 15 years' imprisonment. On appeal, he assigns that his sentences were excessive, he received an erroneous credit for time served, and that his trial counsel was ineffective in a variety of ways. For the reasons that follow, we affirm as modified.

## II. BACKGROUND

On December 11, 2023, McClure and three others were involved in an incident where they robbed, beat, and kidnapped Kenneth Ridges. Ridges had been paying two women for sex when they had a falling out after Ridges told them he no longer wanted to see them. On the night of December 11, the two women came to Ridges' home with McClure and another man. While they

- 1 -

all played card games and drank alcohol together for several hours, the four individuals eventually attacked Ridges and demanded money from him. While beating Ridges, McClure told him that "he fucked with the wrong people" and that he needed to transfer him $1,000 via Cashapp or Venmo. After Ridges was unable to access a money transfer app, McClure punched him in the face, took his car, and drove him to a nearby ATM. However, Ridges was unable to withdraw money from the ATM so they returned to Ridges' home.

Once they arrived back at the house, McClure punched Ridges in the face multiple times as the group stole his electronics. In this endeavor, they forced Ridges to sign bills of sale for a PlayStation 5, a laptop, and a computer tower. At some point while this was happening, McClure got frustrated after failing to remove a graphics card from the computer. He proceeded to punch Ridges in the face multiple times. He then told Ridges, "I should kill you."

Before leaving, McClure told Ridges that if the two women did not receive money through Cashapp the next day, he would return. After the group left, Ridges went to a neighbor's house and reported the incident to law enforcement. When police contacted Ridges, they noticed his eyes were nearly swollen shut, his face was swollen and bruised, his chest had red marks on it, and his clothes were covered in blood. It was ultimately determined that he suffered multiple facial bone fractures and permanent damage to his face.

On December 22, 2023, McClure was charged with first degree assault, a Class II felony; robbery, a Class II felony; and kidnapping, a Class IA felony. A plea agreement was ultimately reached where McClure agreed to plead no contest to attempted first degree assault, a Class IIA felony; robbery, a Class II felony; and first degree false imprisonment, a Class IIIA felony. On May 7, 2024, the district court accepted McClure's pleas and convicted him of the offenses. The court ordered the completion of a presentence investigation report (PSI) and scheduled the matter for sentencing.

A sentencing hearing took place on August 6, 2024. McClure addressed the court first and apologized to his family, Ridges, and the court. He stated that he hoped a drunken mistake would not cost him his future. McClure's attorney then addressed the court. He attempted to provide context to McClure's state of mind by explaining that he had started drinking heavily after his wife filed for divorce. He claimed that McClure did not know about the two women's relationship with Ridges and thought he owed them money. He stated that McClure thought he was helping the women collect a debt and had become overzealous in his drunken state.

Before levying its sentence, the court stated that it had reviewed the PSI and did not think McClure was an appropriate candidate for probation. It noted that McClure had engaged in an "all-night assault of the victim," threatened to kill him, and drove him around the city for money. The court stated it considered McClure's age, mentality, education, experience, social and cultural background, criminal history, and the particulars of his offense. It then sentenced McClure to 4 to 6 years' imprisonment for the attempted first degree assault conviction, 4 to 6 years' imprisonment for the robbery conviction, and 2 to 3 years' imprisonment for the first degree false imprisonment conviction. The court ordered these sentences to run consecutively to one another and gave McClure 80 days' credit for time served.

On August 12, 2024, McClure's attorney filed a motion to withdraw and requested that the court appoint the Sarpy County public defender to represent McClure going forward. The court granted this motion and appointed the public defender as McClure's counsel. However, on August

15, the public defender's office filed a motion to withdraw asserting that it does not accept cases for the purposes of appeal when it did not handle the prior proceedings. McClure eventually retained new counsel, who filed a timely notice of appeal on August 22, 2024.

## III. ASSIGNMENTS OF ERROR

Restated and expanded, McClure assigns the district court erred by (1) imposing excessive sentences and (2) erroneously giving him 80 days' credit for time served when the credit should have been for 217 days. He also assigns that his trial counsel was ineffective because he failed to (3) effectively advocate for him during his sentencing hearing; (4) identify the error in his credit for time served; and (5) file a notice of appeal before withdrawing as counsel.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Tvrdy*, 315 Neb. 756, 1 N.W.3d 479 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court. *State v. Nelson*, 318 Neb. 484, 16 N.W.3d 883 (2025).

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. EXCESSIVE SENTENCES

McClure first assigns that the district court abused its discretion by imposing excessive sentences. He argues his sentences were excessive because the court did not appropriately consider, nor provide an analysis regarding, his age, remorse, and minor criminal history. He also contends his sentences were improper because the court failed to consider the more lenient sentences imposed for the other three individuals involved in the underlying incident. He reports that the two women involved both received terms of probation and the other man was sentenced to 618 days' imprisonment with a credit of 309 days served. With this, he cites to several cases where a defendant had their sentences reduced on appeal to more closely align with the sentences imposed for a codefendant or coconspirator. See, *State v. Carlson*, 225 Neb. 490, 406 N.W.2d 139 (1987); *State v. Komor*, 213 Neb. 376, 329 N.W.2d 120 (1983); *State v. Kruse*, 215 Neb. 408, 338 N.W.2d 781 (1983).

McClure was convicted of attempted first degree assault, a Class IIA felony; robbery, a Class II felony; and first degree false imprisonment, a Class IIIA felony. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022) provides that a Class II felony is punishable by a maximum of 50 years' imprisonment with a minimum of 1 year imprisonment. A Class IIA felony is punishable by a

maximum term of 20 years' imprisonment and does not carry a minimum sentence. *Id*. And a Class IIIA felony is punishable by a maximum of 3 years' imprisonment and 2 years' post-release supervision or a $25,000 fine, or both. *Id*. A Class IIIA felony does not have a minimum term of imprisonment but carries a minimum term of 9 months' post-release supervision if imprisonment is imposed. *Id*. However, if a person convicted of a Class IIIA felony is also sentenced to imprisonment for a Class II or Class IIA felony, they are not subject to the required minimum term of post-release supervision. § 28-105(6). Accordingly, McClure's sentences of 4 to 6 years' imprisonment for each of his Class II and Class IIA felony convictions and his sentence of 2 to 3 years' imprisonment for his Class IIIA felony conviction are within the statutory limits

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. King*, 316 Neb. 991, 7 N.W.3d 884 (2024). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

We first determine that McClure's assertion that the court failed to properly consider his age, remorse, and criminal history is misplaced. It is not an appellate court's function to conduct a de novo review and a reweighing of the sentencing factors in the record. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021). Similarly, the court was under no obligation to articulate the weight it gave each factor. It is not necessary for a sentencing court to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given to them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). Prior to levying its sentence, the district court clearly stated that it had reviewed the PSI and accounted for the applicable sentencing factors in rendering its sentences. Therefore, we cannot determine the court failed to adequately consider McClure's age, remorse, and minor criminal history prior to imposing its sentences.

We also determine the court was under no obligation to consider the more lenient sentences of the other individuals involved. While McClure cites several cases from the 1980's where the Nebraska Supreme Court modified sentences to ensure parity between sentences for codefendants, the Court has since gone away from that practice. In *State v. Morton*, 310 Neb. 355, 371-72, 966 N.W.2d 57, 69-70 (2021), the Court stated:

> In the context of excessive sentence claims, we sometimes "refer[] to sentences imposed in other cases as a means of illustrating an abuse of discretion," but we have clearly held that appellate courts are under no duty to conduct a de novo review of the record to determine whether a sentence is proportionate. To the contrary, once it is determined that the sentence prescribed by statute is constitutional and that the sentence imposed is within statutory limits, "the issue in reviewing a sentence is not whether someone else in a

different case received a lesser sentence, but whether the defendant in the subject case received an appropriate one."

In sentencing [the defendant], the district court was under no obligation to conduct a comparative analysis of "similar" cases—an inquiry that would be entirely impractical for trial courts to undertake. Instead, the court properly considered the PS[I] and accompanying letters, character references, and assessments.

Similarly, in *State v. Vance*, 240 Neb. 794, 800-801, 484 N.W.2d 453, 458 (1992), the Court held:

[T]he mere fact that a defendant's sentence differs from those which have been imposed on co[-]perpetrators in the same court does not, in and of itself, make the defendant's sentence an abuse of discretion; each defendant's life, character, and previous conduct may be considered in determining the propriety of the sentence.

As such, the question in the current matter is not whether McClure's sentences aligned with the sentences of the others involved, but whether his sentences were appropriate given the relevant sentencing factors. After this review, we determine that the circumstances of McClure's crimes and his high risk of recidivism justify his sentences.

Outside of several juvenile adjudications for violating curfew, using tobacco products while underage, and traffic infractions, McClure's only criminal conviction was in 2023 for trespassing, first offense. Despite this minor criminal history, McClure scored in the "Very High" risk to reoffend on the Level of Service Case Management Inventory. He scored in the "Very High" risk level for the education/employment category, and the "High" risk level for the leisure/recreation, alcohol/drug problems, pro-criminal attitude, and antisocial pattern categories. He then scored in the "Medium" risk range for the remaining categories, family/marital, companions, and criminal history. Additionally, on the Adult Probation Substance Abuse Questionnaire, McClure scored in the "problem to maximum percentile" for "alcohol, drugs, violence, and aggressiveness."

Despite McClure's minor criminal history, we cannot ignore the violence of his crimes. On the night of the underlying incident, he arrived at a stranger's house, spent several hours with him, and then over the course of multiple hours, beat him, threatened his life, and robbed him. Ridges reported that McClure punched him in the face so many times that a pool of blood formed beneath him. Ridges now suffers permanent damage from his injuries. These facts display McClure's willingness to use brutal violence and his callous disregard for another's suffering. Given the circumstances of McClure's crimes and his high risk to reoffend, we determine the district court's sentences were not untenable or unreasonable. Therefore, we conclude that the district court did not abuse its discretion in sentencing McClure to a cumulative 10 to 15 years' imprisonment.

## 2. CREDIT FOR TIME SERVED

McClure next assigns the district court erred in only crediting him 80 days for time served when he had spent 217 days incarcerated while the matter was pending. The State concurs with McClure and advocates for us to modify the district court's sentencing order to correct the error.

Although the parties agree, for the sake of completeness, we note that Neb. Rev. Stat. § 83-1,106 (Reissue 2024) provides that:

> Credit against the maximum term and any minimum term shall be given to an offender for time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. This shall specifically include, but shall not be limited to, time spent in custody prior to trial, during trial, pending sentence, pending the resolution of an appeal, and prior to delivery of the offender to the custody of the Department of Correctional Services, the county board of corrections, or, in counties which do not have a county board of corrections, the county sheriff.

Due to the mandatory "shall" language used in § 83-1,106(1), credit for time served must be given for time spent in custody on a charge when a prison sentence is imposed for a conviction of such charge. *State v. Rivera-Meister*, 318 Neb. 164, 14 N.W.3d 1 (2024). The amount of credit for time served to which a defendant is entitled is an absolute and objective number that is established by the record, and courts have no discretion to grant a defendant more or less credit than is established by the record. *Id.* When a trial court gives a defendant more or less credit for time served than he or she is entitled to, that portion of the pronouncement of sentence is erroneous and may be corrected to reflect the accurate amount of credit as verified objectively by the record. *Id.*

It appears the discrepancy in how many days McClure spent incarcerated prior to his sentencing was due to an error in his PSI. The PSI stated that he was in custody from "01/02/2024-07/25/2024." However, the PSI reported that this range only encompassed 80 days. That is obviously an error as there were 206 days from January 2, 2024, until July 25, 2024. However, McClure was not sentenced until August 6, 2024, and the record does not indicate he left custody at any point prior to his sentencing. As such, he is entitled to credit for the days he spent incarcerated beginning on January 2, 2024, until he was sentenced on August 6, 2024, which amounts to 217 days. We therefore modify his sentences to include an additional 137 days of credit for time served, for a total credit of 217 days.

### 3. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

McClure next assigns his trial counsel was ineffective because he failed to (1) effectively advocate for him during the sentencing hearing; (2) identify the error in his credit for time served; and (3) file a notice of appeal before withdrawing as his counsel.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question under the standard of review previously noted. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Clark, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* When a conviction is based upon a guilty plea or a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Amaya*, 276 Neb. 818, 758 N.W.2d 22 (2008). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Clark, supra*.

(a) Advocacy at Sentencing Hearing

McClure assigns that his trial counsel was ineffective for failing to mention various mitigating factors during his sentencing. He asserts that his trial counsel should have discussed the sentences imposed for the others involved in the crimes, that he was employed at the time of his arrest, that he was working toward his GED, and that he had a 1-year-old son to care for. Additionally, he argues his trial counsel should have introduced a substance abuse evaluation to support the contention that his actions were influenced by his problems with alcohol.

We determine the record is sufficient to determine that McClure will be unable to demonstrate he was prejudiced by these alleged failures of his trial counsel. Although not mentioned by his attorney at sentencing, the aspects of McClure's life he references appeared in the PSI. More specifically, the PSI noted that McClure had a 2-year-old son, was working toward his GED, was working at a hotel prior to his arrest, and had a problem with alcohol. Because the district court specified that it had reviewed the PSI prior to sentencing, any mention of the same information by McClure's attorney would have been cumulative. And while there was no mention of the sentences imposed for the others involved, as previously discussed, those sentences are irrelevant to the court's decision as to what sentences were appropriate for McClure. Therefore, we conclude this claim of ineffective assistance fails.

(b) Not Identifying Error in Credit for Time Served

McClure next assigns that his trial counsel was ineffective for failing to identify the error in his credit for time served calculation.

A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. See *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018). Because we are modifying McClure's sentences to include the correct number of days for time served, his ineffective assistance claim regarding the issue does not rest upon existing facts and is no longer applicable. Accordingly, we determine that this issue is moot and McClure will be unable to demonstrate he was prejudiced by this error.

### (c) Not Filing Notice of Appeal Prior to Withdrawing as Counsel

McClure next assigns that his trial counsel was ineffective for failing to file a notice of appeal prior to withdrawing as his counsel.

We determine the record is sufficient to determine that McClure will be unable to demonstrate he was prejudiced by this alleged error of his trial counsel. McClure asserts that his trial counsel's failure to file a notice of appeal jeopardized his ability to file a timely appeal. Nevertheless, despite the delay this may have caused, McClure successfully filed his appeal. Accordingly, we determine any prejudice he may have suffered was cured upon the timely filing of his appeal. As such, we conclude that McClure will be unable to demonstrate he suffered prejudice from this alleged error by his trial counsel.

## VI. CONCLUSION

We determine the district court did not abuse its discretion in fashioning McClure's sentences. We modify the court's sentencing order to include an additional 137 days of credit for time served, for a total credit of 217 days. We also determine McClure will be unable to demonstrate he was prejudiced by his trial counsel failing to mention certain mitigating factors during his sentencing and for failing to file a notice of appeal prior to withdrawing as counsel. Lastly, we determine he will be unable to demonstrate he was prejudiced by his counsel's failure to identify the error in his credit for time served calculation because the issue is now moot.

AFFIRMED AS MODIFIED.